ACCEPTED
01-15-00687-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
10/15/2015 5:13:39 PM
CHRISTOPHER PRINE
CLERK

# No. 01-15-00687-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
10/15/2015 5:13:39 PM
CHRISTOPHER A. PRINE
Clerk

In the Court of Appeals for the
First District of Texas at Houston

ANNISE D. PARKER, MAYOR, ANNA RUSSELL,
CITY SECRETARY, AND CITY OF HOUSTON,

*Appellants*

V.

DAVID B. WILSON,

*Appellee*

On Appeal from the 270th Judicial District Court
Harris County, Texas
Trial Court Case No. 2015-39706

## Brief of Appellants

Donna Edmundson
City Attorney

Judith L. Ramsey
Chief, General Litigation Section

Kathleen Hopkins Alsina
Senior Assistant City Attorney
State Bar No. 09977050

Patricia L. Casey
Senior Assistant City Attorney
State Bar No. 03959075
CITY OF HOUSTON LEGAL DEPARTMENT
900 Bagby, Fourth Floor
Houston, Texas 77002
832.393.6491 (Telephone)
832.393.6259 (Facsimile)
kate.alsina@houstontx.gov
pat.casey@houstontx.gov

*Attorneys for Appellants*

***Oral Argument Conditionally Requested***

## Identity of Parties and Counsel

A complete list of the names and addresses of the parties, the attorneys, and any other person who has an interest in the outcome of this lawsuit:

| **Appellants:** | **Counsel for Appellants:** |
|---|---|
| Annise D. Parker, Mayor<br>Anna Russell, City Secretary<br>City of Houston | Appellate Counsel:<br><br>Judith L. Ramsey<br>Kathleen Hopkins Alsina<br>Patricia L. Casey<br>CITY OF HOUSTON LEGAL DEPARTMENT<br>900 Bagby, Fourth Floor<br>Houston, Texas 77002<br><br>Trial Counsel:<br><br>Patricia L. Casey<br>Darah Eckert<br>CITY OF HOUSTON LEGAL DEPARTMENT<br>900 Bagby, 4th Floor<br>Houston, Texas 77002 |
| **Appellee:** | **Counsel for Appellee** |
| David B. Wilson | Appellate Counsel:<br><br>James D. Pierce<br>1 Sugar Creek Center 1080<br>Sugar Land, TX 77478<br><br>Trial Counsel:<br><br>Keith Gross<br>250 Park Ave.<br>League City, Texas 77573 |

# Table of Contents

**Page**

Identity of Parties and Counsel ................................................................. ii

Index of Authorities ..................................................................... v

Statement Regarding Jurisdiction ................................................... ix

Statement Regarding Oral Argument ................................................ ix

Statement of the Case ...................................................................... x

Issues Presented ......................................................................... xi

Statement of Facts ........................................................................ 1

Summary of the Argument ............................................................. 5

Argument .................................................................................. 9

I.      Standard of Review ............................................................ 9

II.     The underlying lawsuit and the July 28, 2015 Order are moot and should be dismissed. ................................................ 10

III.    The trial court erred in entering the July 28, 2015 Order. .......... 13

    A.      Wilson's petition was an untimely referendum, not a charter amendment. ............................................................. 13

    B.      Wilson's proposed definition of "gender identity" is not relevant to Section 22 of the City Charter; it is based on and directly opposed to the definition of "gender identity" in the equal rights ordinance. ............................................. 17

    C.      The trial court erred in ordering the City Secretary to count and certify the signatures. .......................................... 20

    D.      The trial court abused its discretion by proceeding with the mandamus proceeding without proper notice as required by the Rules of Civil Procedure. ..................................... 22

E.     Wilson sought and received injunctive relief without meeting the requirements of a temporary injunction. .................. 25

         1.     The order is a mandatory injunction. ............................... 25

         2.     Wilson did not prove a right to injunctive relief and the order does not comply with Rules 683 and 684. ........... 28

Conclusion and Prayer ............................................................................ 30

Certificate of Compliance ........................................................................ 32

Certificate of Service .............................................................................. 32

# Index of Authorities

**Page(s)**

**Cases**

*Anderson v. City of Seven Points*,
   806 S.W.2d 791 (Tex. 1991)..........................................................passim

*Bd. of Prison Comm'rs v. Binford*,
   259 S.W. 169 (Tex. Civ. App.—Galveston 1924, no writ) ....................... 28

*Brines v. McIlhaney*,
   596 S.W.2d 519 (Tex.1980)................................................................ 26

*Butnaru v. Ford Motor Co.*,
   84 S.W.3d 198 (Tex. 2002)................................................................. 29

*Camarena v. Tex. Emp't Comm'n,*
   754 S.W.2d 149 (Tex. 1988)..........................................................9, 10

*City of Houston v. Am. Traffic Solutions, Inc.*,
   No. H-10-4545, 2011 WL 2462670 (S.D. Tex. June 17, 2011)............passim

*Custom–Crete, Inc. v. K–Bar Servs., Inc.*,
   82 S.W.3d 655 (Tex. App.—San Antonio 2002, no pet.) ......................... 24

*Del Valle Indep. Sch. Dist. v. Lopez*,
   845 S.W.2d 808 (Tex.1992)................................................................ 26

*Diversicare Gen. Partner, Inc. v. Rubio*,
   185 S.W.3d 842 (Tex. 2005)............................................................... 19

*Escobar v. Sutherland*,
   917 S.W.2d 399 (Tex. App.—El Paso 1996, orig. proceeding) ................. 20

*Haase v. Glazner*,
   62 S.W.3d 795 (Tex. 2001)................................................................. 19

*Helix Energy Solutions Grp., Inc. v. Howard*,
   452 S.W.3d 40 (Tex. App.—Houston [14th Dist.] 2104, no pet.) ... ix, 27, 28

*In re Chaumette*,
   456 S.W.3d 299 (Tex. App.—Houston [1st Dist.] 2015, no pet.) .............. 29

*In re Crawford & Co.*,
   458 S.W.3d 920 (Tex. 2015).................................................................... 19

*In re Hardwick*,
   426 S.W.3d 151 (Tex. App.—Houston [1st Dist.] 2012, no pet.) .........25, 26

*In re Jared Woodfill*,
   --- S.W.3d ---, 2015 WL 4498229 (Tex. July 24, 2015) .....................2, 4, 21

*In re Uresti*,
   377 S.W.3d 696 (Tex. 2012)..................................................................... 12

*In re Williams*,
   --- S.W.3d ---, 2015 WL 4931372 (Tex. Aug. 19, 2015) ............................. 4

*Lancaster v. Lancaster*,
   155 Tex. 528, 291 S.W.2d 303 (1956) ...................................................... 30

*LBL Oil Co. v. Int'l Power Servs., Inc.*,
   777 S.W.2d 390 (Tex. 1989)...................................................................... 24

*Letson v. Barnes*,
   979 S.W.2d 414 (Tex. App.—Amarillo 1998, pet. denied) ........................ 29

*Mattox v. Grimes Cnty. Comm'rs Court*,
   305 S.W.3d 375 (Tex. App.—Houston [14th Dist. 2010, pet. denied)....9, 21

*Obergefell v. Hodges*,
   135 S. Ct. 2584 (2015)............................................................................... 18

*Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*,
   971 S.W.2d 439 (Tex. 1998)...................................................................... 10

*Peeples v. Nagel*,
   137 S.W.2d 1064 (Tex. Civ. App.—Galveston 1940, writ dism'd
   judgm't cor.) ............................................................................................. 28

*Polk v. Davidson*,
   145 Tex. 200, 196 S.W.2d 632 (1946) ...................................................... 12

*Qwest Commc'ns Corp. v. AT&T Corp.*,
24 S.W.3d 334 (Tex. 2000)........................................................ix, 26, 30

*Robinson v. Parker*,
353 S.W.3d 753 (Tex. 2011)............................................................ 10

*Ryland Enter., Inc. v. Weatherspoon*,
355 S.W.3d 664 (Tex. 2011)............................................................ 19

*Tobin v. Serna*,
277 S.W. 2d 176 (Tex. App.—San Antonio 1955, writ ref'd) .................. 28

*Transp. Co. of Tex. v. Robertson Transps., Inc.*,
261 S.W.2d 549 (Tex. 1953).............................................................. 30

*Univ. of Tex. Law Sch. v. Tex. Legal Found.*,
958 S.W.2d 479 (Tex. App.—Austin 1997, no writ) .................................. 9

*Wyly v. Pres. Dallas*,
165 S.W.3d 460 (Tex. App.—Dallas 2005, no pet.) ................................ 28

**Statutes**

Tex. Civ. Prac. & Rem. Code § 6.002............................................................ 4

Tex. Civ. Prac. & Rem. Code § 51.014.......................................................... 4

Tex. Loc. Gov't Code § 9.004...............................................................19, 21

**Other Authorities**

Tex. R. App. P. 29.2 ........................................................................... 4

Tex. R. Civ. P. 245.......................................................................... 24

Tex. R. Civ. P. 680.......................................................................... 28

Tex. R. Civ. P. 683........................................................................8, 29

Tex. R. Civ. P. 684..................................................................8, 29, 30

Tex. R. Civ. P. 687........................................................................8, 25

**City Charter**

City of Houston Charter, art. VII-b, § 2 ..................................................... 16

City of Houston Charter, art. VII-b, § 3 .................................................. 2, 16

**Statement Regarding Jurisdiction**

This is an interlocutory appeal from the trial court's order entered on July 28, 2015, which states that it grants "Plaintiff's Application for Writ of Mandamus." CR.74. The nature and effect of the order is a mandatory temporary injunction, for which the proper appellate remedy is an interlocutory appeal under Texas Civil Practice and Remedies Code § 51.014(a)(4). *Qwest Commc'ns Corp. v. AT&T Corp.*, 24 S.W.3d 334, 336 (Tex. 2000); *Helix Energy Solutions Grp., Inc. v. Howard*, 452 S.W.3d 40, 44 (Tex. App.—Houston [14th Dist.] 2104, no pet.). The Court has jurisdiction under section 51.014(a)(4) of the Texas Civil Practice and Remedies Code. The parties have briefed the issue of jurisdiction in response to the Court's Order of August 19, 2015.

**Statement Regarding Oral Argument**

The underlying lawsuit seeks to place a proposition on the November 2015 ballot. The deadline to do so has passed and therefore both the underlying lawsuit and the order appealed from are moot. Appellants do not believe oral argument would substantially aid the Court's decisional process on this issue. However, if the Court reaches the merits, oral argument may be

helpful on the issue of why the trial court's July 28, 2015 Order of mandamus was error. For this reason, Appellants conditionally request oral argument.

## Statement of the Case

*Nature of the Case*: Suit to compel the City Secretary to certify to the City Council the number of valid signatures on a petition submitted by David B. Wilson (Wilson) purportedly to amend the City Charter, but in reality to alter the definition of "gender identity" in the Houston Equal Rights Ordinance ("equal rights ordinance" or "HERO").

*Course of Proceedings*: On July 9, 2015, Wilson presented a petition to the City Secretary attempting to alter the definition of "gender identity" found in the equal rights ordinance, but calling it a petition to amend the City Charter. CR.9. It is undisputed the City Secretary took no action to count the signatures at that time. On July 10, 2015, Wilson sued, seeking a writ of mandamus to compel the City Secretary to count the signatures. CR.4-14. Over the City's objection to proceeding without proper notice, on July 24, 2015, the trial court held a hearing on the application for mandamus relief. CR.38; 2RR.1.[1]

---

[1] The Reporter's Record filed in this appeal consists of two volumes, but each volume is labeled "Volume 1 of 1." Thus, in this brief, Appellants cite to the July 13, 2015 hearing as "1RR.___" and to the July 24 hearing as "2RR.___."

*Disposition*: On July 28, 2015, the court ordered the City Secretary to "count and certify to Houston City Council the number of valid signatures contained in the petition." CR.74 (App. A). Under the Order, the City Secretary was to complete this task within 30 days of the date the petition was originally filed. CR.74. The defendants, the City Secretary, Mayor Parker, and the City of Houston (referred to collectively as "the City") filed a notice of interlocutory appeal, pursuant to Texas Civil Practice and Remedies Code § 51.014(a)(4). CR.91-93.

*Trial Court*: The Honorable Brent Gamble, Harris County, Texas, 270th Judicial District Court.

## Issues Presented

1. It is too late for Wilson to obtain the relief he pled for, inclusion of his proposition as a ballot item in the November 2015 election. Therefore, both the July 28, 2015 Order and the underlying lawsuit are moot and must be dismissed.

2. The trial court erred by requiring the City Secretary to count the signatures. The petition filed by Wilson is not a charter amendment but a referendum; as such, its filing was untimely and triggered no duty for the City Secretary to count the valid signatures or certify the number to City Council.

3. The trial court abused its discretion in making what effectively was a merits decision without giving the City of Houston proper notice of trial.

4. The trial court abused its discretion when it entered an order that was in effect a temporary injunction, but without proof of a probable right to relief or irreparable injury, and without meeting the procedural requirements of specificity and a bond under Texas Rules of Civil Procedure 683 and 684.

## Statement of Facts

On May 28, 2014, the Houston City Council voted to pass Ordinance No. 2014-530, known as the Houston Equal Rights Ordinance, also referred to as "HERO." Supp.CR.___[2] (App. B). The ordinance was officially published on June 3, 2014. The equal rights ordinance prohibits discrimination based on an individual's sex, race, color, ethnicity, national origin, age, familial status, marital status, religion, disability, sexual orientation, genetic information, gender identity, or pregnancy in city contracts, public accommodations, private employment (excluding religious organizations), city services, city employment and housing. Supp.CR.___ (App. B). The ordinance included a definition of "gender identity." Supp.CR.___ (App. B). This is the only place in the entire City Code of Ordinances or City Charter where "gender identity" is ever mentioned.

The equal rights ordinance was the subject of a timely-filed referendum to repeal the ordinance, which eventually was the subject of a jury trial[3] and a

---

[2] Appellants' exhibits were requested but were not included in the original Clerk's Record. The Appellants have requested a Supplemental Clerk's Record to correct the error. Because the Supplemental Record was not filed by the deadline for this brief, Appellants will file an amended brief to include all citations to the supplemental record.

[3] *Woodfill, et al. v. Anna Russell, City Secretary, et al.*, No. 2014-44974, in the 152nd Judicial District Court of Harris County, Texas.

petition for writ of mandamus to the Texas Supreme Court.[4] During the same time period, Wilson was circulating his own separate petitions for adoption of a definition of "gender identity" that was contrary to the definition in the equal rights ordinance. 1RR.11:7-23.

On July 9, 2015, over a year after the equal rights ordinance was adopted, Wilson presented his petition to the City Secretary. CR.61. Under the City Charter, a referendum on an ordinance must be filed within 30 days of the day the ordinance was published and must conform to specific "form and manner" requirements, including a requirement that there be a circulator's affidavit on every page.[5] Wilson's petition was an untimely referendum and did not conform to those requirements. The City Secretary took no action to count the signatures at that time.

Wilson alleged his petition was not a referendum on the ordinance but was instead a "charter amendment." CR.5. On July 10, 2015, the next day, he filed in the district court a pleading entitled "Original Petition for Mandamus" against the City Secretary, the Mayor, and the City of Houston. CR.4. Wilson pled for "*mandatory injunctive relief* to require each of the Respondents to fulfill their ministerial duties." CR.12 (emphasis added). He sought "all other and

---

[4] *In re Jared Woodfill*, --- S.W.3d ---, 2015 WL 4498229 (Tex. July 24, 2015).

[5] City of Houston Charter, art. VII-b, § 3.

further declaratory *and injunctive relief* to which Petitioners may show themselves to be justly entitled." CR.13 (emphasis added). Before the City was served with the Petition, it was served with a "Notice of Hearing" setting a "Motion to Mandamus" for hearing on Monday, July 13, 2015 at 9:00 a.m., three days after the petition had been filed. CR.15.

At the July 13, 2015 hearing, the Court sustained the City's objection to proceeding with insufficient notice. Wilson amended his lawsuit and immediately reset the mandamus to July 24, 2015. CR.23, 30. In the first amended petition, Wilson dropped his allegations against the City and the Mayor, and asserted a claim for a declaratory judgment with respect to the duty of the City Secretary.[6] CR.27. He also removed the request for injunctive relief. CR.27.

Just two weeks after the original petition was filed, the trial judge held a hearing on Wilson's petition for writ of mandamus. Wilson offered no evidence at the hearing, but in argument asked the court to grant immediate emergency relief. 2RR.35:18-23. On July 28, 2015, the trial court entered an order that

---

[6] The City and Mayor were still named as parties but the only claims in the body of the petition were against the City Secretary. Wilson later also added claims against City Council members. CR.75.

> Anna Russell in her capacity as City Secretary for the City of Houston shall count and certify to Houston City Council the number of valid signatures contained in the petition submitted by Plaintiff on or before 30 (thirty) days from the date the same were filed, namely July 9, 2015.

CR.74.

The City unsuccessfully sought clarification of the Order and an extension of time, based on Ms. Russell's affidavit that she did not believe that she and her staff would be able to timely comply. Supp.CR.___. On August 7, 2015, the City timely filed a notice of interlocutory appeal and superseded the order. Tex. Civ. Prac. & Rem. Code § 51.014(a)(4) and 6.002; Tex. R. App. P. 29.2.

On July 24, 2015, the Texas Supreme Court decided *In re Jared Woodfill*, ordering City Council to reconsider the equal rights ordinance, and if they did not repeal it, to submit the equal rights ordinance to the voters in the next City election. --- S.W.3d ---, 2015 WL 4498229 (Tex. July 24, 2015). Council did not repeal the ordinance and voted to put it on the ballot in November, 2015. In a second opinion regarding the language required on the ballot, the Supreme Court held that the vote was to "submit the ordinance" for the voters' approval; it was not a vote to "repeal" the ordinance. *In re Williams*, --- S.W.3d ---, 2015 WL 4931372 (Tex. Aug. 19, 2015). Therefore whether the equal rights ordinance, including its definition of "gender identity," should be included in

4

the Code of Ordinances will be voted on by the voters in the City of Houston in the November 2015 election.

## Summary of the Argument

The Houston Equal Rights Ordinance, if approved by the voters, will prohibit discrimination in city employment and city services, city contracts, public accommodations, private employment, and housing. Like others who have opposed the Ordinance, Wilson's objection to it has always been focused on its definition of "gender identity." Wilson is concerned about the effect of this provision on the safety of public bathrooms.

The substantive issue raised by this lawsuit is whether Wilson's petition to submit to the voters a definition of "gender identity" contrary to that in the equal rights ordinance was in form and effect a petition for an amendment to the City of Houston Charter, as he claims, or whether it was a referendum to repeal a term of the ordinance. The answer to that question is fundamental to whether Wilson was entitled to the relief he sought—that the City Secretary be ordered to count and certify the number of valid signatures in time for the November 2015 election.

The City was faced with the same issue in a challenge to its red-light camera ordinance in 2010, where it accepted the citizens' characterization of the petition as a charter amendment. A federal district court ultimately ruled

that the City was wrong not to look beyond the "label" of the petition, holding it is the "character and effect" of the proposition, not the "label" on it, that determines if it is a charter amendment or a referendum on an ordinance. *City of Houston v. Am. Traffic Solutions, Inc.*, No. H-10-4545, 2011 WL 2462670 (S.D. Tex. June 17, 2011).

Here, the trial court never answered the basic question of the character of Wilson's petition. It accepted Wilson's label and on that faulty foundation entered an order unsupported by either fact or law. For that reason alone, the order compelling the City Secretary to count and certify the number of valid signatures was error. CR.74. The City Secretary had no ministerial duty to count signatures because the petition was, in "character and effect," a referendum to repeal the definition of "gender identity" in the equal rights ordinance and was untimely. Further, even accepting Wilson's label of the petition as a charter amendment, he could point to nothing establishing a clear duty for the City Secretary to perform any action within the 30-day time limit he sued for.

But although these substantive issues are important, several procedural issues should preclude the Court from ever reaching them. First and most important, Wilson's lawsuit, as well as the July 28 Order, are now moot. Wilson's pleadings in the trial court sought immediate relief in order to meet

the deadlines for the November 2015 election. Even while the case was pending in this Court, he went directly to the Texas Supreme Court seeking a writ of mandamus, arguing there was a compelling reason to do so because without immediate relief it would "likely be too late" for his proposition to be placed on the November 2015 ballot.[7] The deadline for items to be placed on the ballot is now passed and Wilson's claims, along with the July 28 Order, are moot. A lawsuit on his proposition to redefine "gender identity" will not be ripe until and if the citizens of the City of Houston vote in favor of the equal rights ordinance.

The trial court also abused its discretion in the procedure it followed. A trial court mandamus is not a common procedure, but the Texas Supreme Court has made clear it is a civil action and is subject to the rules of procedure just as in any other suit. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 792 (Tex. 1991). It is not in itself a basis for emergency injunctive relief. Nevertheless, over the City's objection, the trial court held a hearing on the petition for writ of mandamus just fourteen days after Wilson filed suit and four days later entered an order granting Wilson the relief he sought—all before even the deadline for filing an original answer had passed. The failure to

---

[7] *See In re Wilson*, No. 15-0636, in the Texas Supreme Court, Petition for Writ of Mandamus, p. 12. (Copy attached as App. C.)

follow the rules of procedure, including allowing at least 45-days' notice of a trial setting on the petition for writ of mandamus, was a clear abuse of discretion.

In fact, although he noticed the July 24 hearing as a hearing on the petition for writ of mandamus, the relief Wilson sought, and that the trial court granted, was injunctive—a mandatory injunction under Rule 687 of the Texas Rules of Civil Procedure. The City Secretary was clearly required to "obey and execute such order as the judge has seen proper to make," the definition of a mandatory injunction. Tex. R. Civ. P. 687. It is the character and function of an order, not its title, that determine its classification.

But although it granted injunctive relief, the July 28 Order was unsupported by any witness testimony or documentary evidence, did not "set forth the reasons for its issuance," did not set a trial date, and was not supported by a bond. Tex. R. Civ. P. 683, 684. The Order fails to comply with any of the evidentiary or procedural requirements for an injunction.

For all of these reasons, the trial court erred in signing the order. This Court should find Wilson's lawsuit moot, and declare the order of July 28, 2015 void. If the Court does not find the lawsuit moot, it should reverse and vacate the order.

**Argument**

## I. Standard of Review

An original proceeding for a writ of mandamus initiated in the trial court is a civil action subject to trial and appeal on substantive law issues and subject to the rules of procedure as any other civil suit. *Anderson*, [806 S.W.2d at 792 n.2](#) (Tex. 1991). The standard of review on appeal is the same as in any civil proceeding. *[Id.](#)* [at n.2, 3](#) (applying sufficiency of the evidence review to trial court's fact findings in suit for mandamus); *see also, e.g.*, *Univ. of Tex. Law Sch. v. Tex. Legal Found.*, [958 S.W.2d 479](#), [481](#) (Tex. App.—Austin 1997, no writ) (citing *Anderson*) ("[W]e do not review the trial court's findings of fact and conclusions of law under the abuse of discretion standard applicable to mandamus actions originating in appellate courts … [w]e review them in accordance with the standards generally applicable to trial-court findings and conclusions."); *Mattox v. Grimes Cnty. Comm'rs Court*, [305 S.W.3d 375](#), [380-81](#) (Tex. App.—Houston [14th Dist. 2010, pet. denied) (in mandamus suit decided by summary judgment, applying summary judgment standard). However here, because no evidence was presented at the hearing, there are no fact-findings and no evidence to review.

This Court reviews the issue of mootness as a question of law. *See, e.g.*, *Camarena v. Tex. Emp't Comm'n,* [754 S.W.2d 149](#), [151](#) (Tex. 1988).

**II.** **The underlying lawsuit and the July 28, 2015 Order are moot and should be dismissed.**

Wilson's lawsuit is moot; it will not be ripe until and if the equal rights ordinance is approved by the voters in the November 2015 election. Wilson admitted that his claims would be moot if not placed on the November 2015 ballot when he filed an emergency petition for writ of mandamus in the Texas Supreme Court on August 24, 2015, while the appeal was pending.[8] Wilson argued he had a compelling reason to go directly to the Supreme Court to seek a mandamus because otherwise he would miss the deadline for the November 2015 election.[9]

Mootness and ripeness are related doctrines. Both limit courts to deciding cases in which an actual controversy exists. *Camarena*, 754 S.W.2d at 151 (holding the mootness doctrine limits courts to deciding cases in which an actual controversy exists); *Robinson v. Parker*, 353 S.W.3d 753, 755 (Tex. 2011) ("Ripeness … emphasizes the need for a concrete injury for a justiciable claim to be presented.") (citations omitted). Both doctrines are rooted in the prohibition against advisory opinions. *See Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998).

---

[8] *In re Wilson*, No. 15-0636, in the Texas Supreme Court, Petition for Writ of Mandamus, p. 12. (App. C).

[9] *Id.* at p. 14. (App. C).

On July 28, 2015, when the court entered the order of mandamus, the live pleading was the First Amended Petition, where Wilson sought "to exercise his statutory right to obtain a vote by the citizens of the city of Houston to decide the matter in November 2015 election ballot." CR.26.

Wilson argued that "irreparable harm" would result from failure to place the item on the November 2015 ballot, and that otherwise "the issue becomes moot." CR.27.

Wilson's current live pleading below, the Second Amended Petition (filed after the July 24 hearing) pleads:

> that City Council members "order Wilson's proposed amendment to be printed on the election ballot for the November 2015 election";
>
> … that each City Council member perform his/her ministerial duties and order, or cause Wilson's Charter Amendment be placed in the official city newspaper at least two weeks prior to the election and cause Wilson's proposed Charter Amendment to appear on the election ballot;
>
> that Wilson "seeks to exercise his statutory right to obtain a vote by the citizens of the city of Houston to decide the matter in November 2015 election ballot"; and
>
> that "Wilson, and the people of Houston will suffer irreparable harm if the proposed Charter Amendment is not put on the election ballot."

CR.78, 79.

In his Prayer, he specifically seeks

11

… that Wilson's proposed Charter Amendment be placed on the November election ballot….

CR.81.

Wilson also sued all City Council members for the purpose of including his proposition on the ballot for the November 2015 election, and alleged damages of $80,000 and attorneys' fees if Defendants "maliciously failed to perform." CR.80.[10]

The deadline for issues to be placed on the November 2015 ballot has passed.[11] The July 28, 2015 Order that is the subject of this appeal is moot. Wilson's mandamus suit seeking that his petition be placed on the November 2015 ballot is also moot and must be dismissed. *See Polk v. Davidson*, 145 Tex. 200, 196 S.W.2d 632, 634 (1946) ("[W]hen the time comes that the issues cannot be heard and a final judgment entered adjudging the validity or invalidity of the nominee's certificate so that absentee ballots can be printed and available to voters as and when required by statute, the contest is moot and must be dismissed."); *see also, e.g.*, *In re Uresti*, 377 S.W.3d 696, 696 (Tex. 2012) (holding once an election begins, a challenge to the candidacy of an individual becomes moot).

---

[10] These claims are unsupported by any factual allegations.

[11] At the Texas Supreme Court Wilson argued the deadline was August 31, 2015.

**III. The trial court erred in entering the July 28, 2015 Order.**

If the Court does not dismiss the underlying case as moot and reaches the merits of this appeal, it should find a) that Wilson's petition was a referendum to repeal the definition of "gender identity" in the equal rights ordinance, not a charter amendment; b) that the City Secretary had no duty to count and certify the signatures; c) that the trial court failed to comply with the rules of procedure; and d) that the court's order was a temporary injunction unsupported by evidence of a probable right to relief or irreparable injury.

**A. Wilson's petition was an untimely referendum, not a charter amendment.**

Wilson's petition was an untimely effort to repeal the definition of "gender identity" in the equal rights ordinance. He cannot change its character by claiming it is something else. The nature of the petition is fundamental to understanding why the trial court erred in ordering the City Secretary to count and certify the signatures.

This is not the first time this issue has arisen in Houston. In *City of Houston v. American Traffic Solutions, Inc.*, federal district judge Lynn Hughes considered whether a petition to remove red light cameras was a charter amendment or a referendum. 2011 WL 2462670. The issues in that case are almost identical to those here, and Judge Hughes' opinion provides a clear roadmap for analyzing whether Wilson's petition is a charter amendment as he

claims, or a mislabeled petition to repeal a part of the equal rights ordinance. The *effect* of the proposed amendment is key to that distinction.

*ATS* arose from a controversy regarding the use of cameras to record cars running red lights, resulting in penalties to the car owners. [*Id.*, at \*1](). The City adopted an ordinance to use the cameras and two years later hired ATS to install the cameras, administer the notices to car owners, and collect the penalties. Four years after the cameras were installed, a citizen group petitioned the City for an election to amend the City Charter to disallow the use of cameras. The City accepted the petition as the citizens characterized it, as a petition to amend the City Charter, and called a special election. A majority of the voters agreed that the cameras should not be used. As a result, the City amended its Charter and then cancelled its contract with ATS.

ATS sued the City in federal court for breach of contract, arguing that the charter amendment was invalid. ATS argued that the citizen's petition was in reality a referendum targeted to repeal a specific ordinance. The validity of the election, and the City's right to cancel the contract, depended on the nature of the petition.

> The court explained the differences in the City Charter and ordinances:
>
> The charter, like a constitution, structures the government; ordinances, like statutes, make policy choices for their operation. Charters create officers, specify election or appointment, prohibit types and levels of taxation, and similar elemental things.

14

> Ordinances set speed limits, reorganize departments, appropriate, and similar managerial things. Although this distinction may blur at the edge, charters and ordinances are different and must be distinguishable. The rules of Texas and Houston call for them to be treated differently.

2011 WL 2462670, at *2.

Ordinances, like statutes, "control the ordinary operations of the city." *Id.*, at *1. The nature of the proposition regarding red-light cameras was like a statute and the text of the proposition voted on at the election was taken from the ordinance. If passed, the effect of the proposition would be to repeal the ordinance—it could not be enforced with that charter amendment on the books. In short, "[b]oth the ordinance and the amendment are about exactly the same thing." *Id.*, at *2. Judge Hughes held that "given its effect, the proposition is a referendum." *Id.*, at *3. Because a referendum petition must be filed within 30 days of the adoption of the ordinance, it was untimely. *Id.*

Like the anti-red light petition in *ATS*, the nature of Wilson's proposition to redefine "gender identity" is like a statute. It reflects a policy choice for operation of city government. In addition, the significant language of the proposition is taken from the definition of "gender identity" in the equal rights ordinance:

15

| | |
|---|---|
| *Gender identity* means an **individual's innate identification**, appearance, expression or behavior **as either male or female**, although the same may not correspond to the individual's body or gender **as assigned at birth**.<br><br>Equal Rights Ordinance, § 17-1. Supp.CR.\_\_\_ (emphasis added). (App. B). | Except as required by State or Federal law, the City of Houston shall only define gender identify [sic] as an individual **innate identification, as either a male or female which is assigned at birth**. Perceived or expressed gender identification is not allowed in defining gender identify [sic].<br><br>Plaintiff's Second Amended Pet., ¶ 7. CR. 77 (emphasis added). |

The effect of the proposition would be to repeal the protections of the equal rights ordinance (if passed) for one of its protected groups. In short, just like the red-light camera proposition, Wilson's petition was in nature and effect a referendum to repeal a part of the ordinance. Wilson mislabeled the petition a charter amendment because he filed it far too late to meet the 30-day referendum deadline. *See*, City of Houston Charter, art. VII-b, §§ 2(b), (3). Calling this a petition for a charter amendment does not make it so. It is an untimely referendum.

In *ATS*, Judge Hughes quoted Abraham Lincoln: "If Congress said that a goat's tail was a leg, how many legs would a goat have? Four. Calling a tail a leg does not make it so." 2011 WL 2462670, at *3. Wilson calling his referendum a "charter amendment" does not make it so.

16

**B.** **Wilson's proposed definition of "gender identity" is not relevant to Section 22 of the City Charter; it is based on and directly opposed to the definition of "gender identity" in the equal rights ordinance.**

In his First Amended Petition, Wilson clearly identified "Ordinance No. 2014-530, Art. 17-2," the equal rights ordinance, as his target:

> The proposed Charter Amendment will benefit the people of Houston in that it will aid to law enforcement officers in protecting young boys and girls using the public restrooms from those people that would enter a public restroom of the opposite sex with the intent to gratify their sexual perversions by watching others. Under a current ordinance, gender identification is too broadly defined to protect children from child predators and provides: City Ordinance No. 2014-530, Article 17-2 provides: Gender Identity means an individual's innate identification, appearance, expression or behavior as either male or female, although the same may not correspond to the individual's body or gender as assigned at birth.

CR.26.

To try to avoid the fact that his referendum was untimely, Wilson claimed his petition seeks to amend not the equal rights ordinance, but Section 22 of the City Charter. CR.24. But Section 22 does not in any way address gender identity; it concerns employment benefits for City employees and those doing business with the City. Section 22 provides, in part:

> Except as required by State or Federal law, the City of Houston shall not provide employment benefits, including health care, to persons other than employees, their legal spouses and dependent children; nor shall the City provide any privilege in promotion, hiring, or contracting to a person or group on the basis of sexual preference, either by a vote of the city council or an executive order by the Mayor. Further, the City of Houston shall not require

17

entities doing business with the City to have any of the above benefits or policies.

Supp.CR.___.

Section 22 does not use the term "gender identity"; and following *Obergefell v. Hodges*, the term "legal spouses" is not impacted by gender. 135 S. Ct. 2584 (2015). Neither does Section 22 concern sex-segregated restrooms. The term "gender identity" is nowhere found in the City Charter.

That Wilson's true goal was to repeal the definition of gender identity in the equal rights ordinance is also evidenced by his letter accompanying the June, 2015 petition drive. There, Wilson referenced what he referred to as the "Bathroom Ordinance":

> You may have heard that the two previous petition drives **challenging and seeking to reverse Mayor Parker's Bathroom Ordinance** are either tied up in court or rejected by the City.

Supp.CR.___ (emphasis added).

The cover letter he sent with the April, 2015 petition again identified the target of his efforts:

> The City of Houston Mayor Parker is pushing her personal homosexual agenda with Executive Order (1-50) **and City of Houston Ordinance (#2014-530)** [the equal rights ordinance] which allows men to use the women's restroom if they perceive or express themselves as women.

Supp.CR.___ (emphasis added).

18

Wilson requested that the City Secretary count and certify the results of his petition within 30 days, the time limit set out in Houston City Charter, article VII-b, the City Charter provision governing referenda. The City Charter does not include a similar provision for charter amendments. Only state law provides a source for citizen-initiated charter amendments, and it does not include any statute imposing a ministerial duty on a city secretary or any other official to count and certify within 30 days. Tex. Loc. Gov't Code § 9.004.

Just like a court must look beyond the title of a pleading to its substance, neither the City nor this Court is bound to accept Wilson's characterization of his petition as a charter amendment. *See Ryland Enter., Inc. v. Weatherspoon*, 355 S.W.3d 664, 666 (Tex. 2011) (observing that courts should acknowledge the substance of the relief sought despite the formal styling of the pleading). *See also, e.g.*, *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005) (holding that a health care liability claim cannot be recast as another cause of action to avoid statutory requirements); *Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001) (holding that if it permitted a fraud claim seeking to recover the benefit of the unenforceable bargain, the court would deprive the statute of frauds of any effect); *In re Crawford & Co.*, 458 S.W.3d 920, 926 (Tex. 2015) (holding that claimants could not recast their claims to avoid the exclusive jurisdiction of administrative agency).

The trial court abused its discretion by failing to look beyond Wilson's characterization of the petition to determine its true character and effect. Had it done so, the court would have seen, as Judge Hughes did in *ATS*, that the petition does not seek a charter amendment; it seeks a referendum to effectively repeal the part of the equal rights ordinance that would protect individuals based on their gender identity.

### C. The trial court erred in ordering the City Secretary to count and certify the signatures.

As the federal court's decision in *ATS* made clear, the City Secretary could not simply accept Wilson's "label" of his petition as a charter amendment. The City Secretary had no ministerial duty to accept the petition or begin counting when the petition did not comply with City requirements as to form, content and procedure for a referendum. *See, e.g.*, *Escobar v. Sutherland*, 917 S.W.2d 399, 406 (Tex. App.—El Paso 1996, orig. proceeding) (where application for a place on the electoral ballot did not comply with form content and procedure required by law, application must be rejected). Those procedures assure an orderly process for challenging City ordinances in a timely manner. The trial court's order that the City Secretary count signatures and certify the number of valid signatures, even though Wilson had not met the 30-day deadline for challenging a City ordinance, defeats that procedure.

And even accepting Wilson's characterization of the petition as a charter amendment, the trial court still abused its discretion because it ordered that the City Secretary perform ministerial duties that are not clearly specified and supported by law. A court cannot issue mandamus relief against a public official unless "the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion." *In re Jared Woodfill*, 2015 WL 4498229, at \*3 (quoting *Anderson*, 806 S.W.2d at 793). *See also Mattox*, 305 S.W.3d at 380.

Wilson stated to the trial court that the relief he was seeking was under the Local Government Code; he also admitted that nothing in that law required the City Secretary to count signatures for an amendment to the City Charter. 2RR.26 Nor does the Local Government Code mandate a 30-day period for signatures to be counted for a charter amendment. Tex. Loc. Gov't Code § 9.004. Section 9.004 imposes no time limit for the governing body to submit a proposed charter amendment to the voters and no time limit for determining if a petition is signed by a number of qualified voters. Nothing in Section 9.004 imposes on the City Secretary a "clear duty" to count and certify signatures for a charter amendment within 30 days of the date the petition is delivered.

If Wilson is in fact seeking an amendment to the City Charter as he claims and pleads, there was no duty for the City Secretary to comply within 30 days. If, as the City asserts, the nature and effect of Wilson's petition, demonstrates that it is a referendum on the equal rights ordinance, it was untimely. Either way, the trial court erred by ordering the City Secretary to count and certify the signatures.

**D.** **The trial court abused its discretion by proceeding with the mandamus proceeding without proper notice as required by the Rules of Civil Procedure.**

The trial court erred not only by the substance of the order, but also by the procedure it followed. The court failed to comply with the rules of civil procedure with respect to the hearing on the mandamus petition and in so doing deprived the City of due process of law.

An original proceeding for a writ of mandamus issued in a trial court is a civil action subject to trial and appeal on substantive law issues and is subject to rules of procedure just as any other civil suit. *Anderson*, 806 S.W.2d at 792. A mandamus must proceed to trial and judgment just as in any other action. *Id.* "There is no distinguishable difference in principle in the course of proceeding and result attained in it and any other suit in the District Court." *Id.*

In his "Original Petition for Mandamus," Wilson pled for "*mandatory injunctive relief* to require each of the Respondents to fulfill their ministerial duties" and in his prayer sought "all further declaratory *and injunctive relief* to which Petitioners may show themselves to be justly entitled." CR.12-13 (emphasis added). Even before the City was served with the Petition, it was served with a "Notice of Hearing" setting a "Motion to Mandamus" for hearing on Monday, July 13, 2015 at 9:00 a.m., three days after the petition had been filed. CR.15.

The City objected to the short notice and the July 13 hearing was reset to July 24, 2015. CR.18, 30. By that time Wilson had amended his petition to add a claim for declaratory relief. CR.27. While he dropped the direct references to injunctive relief, Wilson still pled he had suffered and would continue to suffer "irreparable harm" and that he had "no other adequate remedy at law." CR.26, 27. Fourteen days after the original petition was filed, Wilson had his hearing, but he offered no evidence to support his claims. Nevertheless, on July 28, 2015, the trial court entered an order that

> Anna Russell in her capacity as City Secretary for the City of Houston shall count and certify to Houston City Council the number of valid signatures contained in the petition submitted by Plaintiff on or before 30 (thirty) days from the date the same were filed, namely July 9, 2015.

CR.74.[12]

If the hearing on July 24, 2015 was in fact a hearing for final relief on a petition for writ of mandamus, the trial court abused its discretion when it failed to follow the Texas Rules of Civil Procedure and proceeded with the hearing on insufficient notice. The City was entitled to a minimum of 20 days to prepare and serve an answer and to reasonable notice of not less than 45 days for trial, just as with any other lawsuit. *Anderson*, 806 S.W.2d at 792; Tex. R. Civ. P. 245. When a defendant makes an appearance in a case, as the City Secretary did here, the 45 days' notice of a trial setting is a matter of due process and is mandatory. Tex. R. Civ. P. 245; s*ee LBL Oil Co. v. Int'l Power Servs., Inc.*, 777 S.W.2d 390, 390–91 (Tex. 1989) (per curiam); *Custom–Crete, Inc. v. K–Bar Servs., Inc.*, 82 S.W.3d 655, 659 (Tex. App.—San Antonio 2002, no pet.). Failure to give proper notice is grounds for reversal. *Custom-Crete*, 82 S.W.3d at 659.

The hearing on the petition for writ of mandamus proceeded, over the City Secretary's objection, only fourteen days after Wilson filed his petition. CR.32; 2RR.1. The order purported to be a final ruling on "Plaintiff's Application for Writ of Mandamus." CR.74. In this Court, Wilson disputes

---

[12] On July 30, 2015, Wilson again amended his petition to sue the City Council members and add a claim for money damages. City Council members were not parties to this suit at the time the trial court entered its Order.

24

the order is in reality a temporary injunction. *See* Reply to Response to Notice to Show Court's Appellate Jurisdiction, filed September 1, 2015. However, if this order is, as Wilson contends, a final order on his petition for writ of mandamus, the Appellants should have been afforded forty-five days' notice of the hearing, as required by Rule 245 and due process.

### E. Wilson sought and received injunctive relief without meeting the requirements of a temporary injunction.

#### 1. The order is a mandatory injunction.

The hearing on July 24, 2015 did not result in a final order on a petition for writ of mandamus, but instead in an order that is, in its character and function, a temporary injunction. Wilson originally pled for injunctive relief and the relief he sought and obtained was injunctive relief.

Under Rule 687, a temporary injunction may be either prohibitive or mandatory—it may order a party to "desist and refrain from the commission or continuance of the act enjoined," or to "obey and execute such order as the judge has seen proper to make." Tex. R. Civ. P. 687; *In re Hardwick*, 426 S.W.3d 151, 159 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("An injunction may be either prohibitive, forbidding particular conduct, or mandatory, requiring particular conduct."). The July 28 order was mandatory. It ordered that the City Secretary "shall count and certify to the Houston City

Council the number of valid signatures." CR.74. Although the order does not acknowledge it is a mandatory temporary injunction, the Texas Supreme Court has long ago "rejected the notion that 'matters of form control the nature of the order itself.'" *Qwest,* 24 S.W.3d at 336 (quoting *Del Valle Indep. Sch. Dist. v. Lopez,* 845 S.W.2d 808, 809 (Tex.1992)); *see also, e.g., In re Hardwick,* 426 S.W.3d at 159 (citing *Del Valle,* 845 S.W.2d at 809) ("Matters of form do not control whether an order is an injunction; rather 'it is the character and function of an order that determine its classification.'").

In *Qwest,* the Supreme Court held that a trial court's interlocutory order that compelled *Qwest* to undertake certain monitoring and notice provisions when conducting its operations was a temporary injunction. The Court explained:

> In *Del Valle Independent School District v. Lopez,* we rejected the notion that "matters of form control the nature of the order itself— it is the character and function of an order that determine its classification." 845 S.W.2d 808, 809 (Tex. 1992). We reasoned that if errors in the form of the order determined the order's status, then those errors would deny review of the very defects that render the order void. *See Del Valle,* 845 S.W.2d at 809–10; *Brines v. McIlhaney,* 596 S.W.2d 519, 523 (Tex.1980).

*Qwest,* 24 S.W.3d at 336.

The Fourteenth Court of Appeals' recent decision in *Helix* similarly found that an interlocutory order requiring a maritime employer to make payments to a seaman was a temporary injunction, even though it was labeled

26

as an order granting a motion to compel. *Helix*, 452 S.W.3d at 44. Justice Christopher's comment in that case applies equally here: "[Plaintiff] has not cited, and we have not found, any provision of Texas procedural law authorizing a litigant to obtain an interlocutory order on the merits from a state court while avoiding both the rules governing summary judgments and those governing injunctive relief." *Id.*

In his Original Petition for Writ of Mandamus, Wilson pled for injunctive relief. CR.11, 13. Although he dropped the words "injunctive relief" from his First Amended Petition, the substantive relief he requested remained the same. CR.27. The specific action the trial court ordered—that the City Secretary "count and certify" the signatures on a short deadline—is a classic example of a mandatory temporary injunction. *See, e.g.*, *Helix*, 452 S.W.3d at 44.

There are no special provisions in the rules of civil procedure for immediate, emergency relief in a suit seeking a trial court mandamus. A party who files a petition for writ of mandamus in a district court and wants immediate temporary relief has the same burden and must follow the same procedures as in any other suit. He must seek temporary injunctive relief under Rules 680-693 of the Texas Rules of Civil Procedure. *See Tobin v. Serna*, 277 S.W. 2d 176, 177 (Tex. App.—San Antonio 1955, writ ref'd); Tex. R. Civ. P.

27

680 et seq.[13] The requirements for obtaining a temporary injunction may not be evaded by calling it something else. *See, e.g.*, *Helix*, 452 S.W.3d at 44 (holding order "to compel" payments was in reality a mandatory temporary injunction).

The July 28 Order was not the result of a summary judgment proceeding, a trial on the merits, or even an evidentiary hearing. At the time the order was entered, there was still pending an asserted claim for a declaratory judgment. CR.27. Although all of the underlying claims are now moot, at the time the July 28 Order was entered it was an interlocutory order, and in character and function it was a temporary injunction.

### 2. Wilson did not prove a right to injunctive relief and the order does not comply with Rules 683 and 684.

The July 28 Order must be reviewed as a temporary injunction. To obtain a temporary injunction, the applicant must plead and prove: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru v. Ford*

---

[13] *See also, e.g.*, *Wyly v. Pres. Dallas*, 165 S.W.3d 460, 462 (Tex. App.—Dallas 2005, no pet.) (interlocutory appeal in suit seeking temporary injunction and writ of mandamus); *Peeples v. Nagel*, 137 S.W.2d 1064, 1066, 1067 (Tex. Civ. App.—Galveston 1940, writ dism'd judgm't cor.) (in suit seeking temporary injunction, mandatory injunction, and mandamus, trial court abused its discretion in not having preserved subject matter of suit by issuing temporary injunction); *Bd. of Prison Comm'rs v. Binford*, 259 S.W. 169 (Tex. Civ. App.—Galveston 1924, no writ) ("[W]e are of the opinion that the trial court had authority or jurisdiction to hear and determine the suit for mandamus, and pending such hearing, had authority to issue a temporary injunction for the purpose before stated [to preserve the status quo].").

*Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). The party seeking an injunction must also state a willingness to post bond. Tex. R. Civ. P. 684. And significantly here, the applicant must introduce at the hearing competent evidence to support a probable right to recovery and a probable injury. *Letson v. Barnes*, 979 S.W.2d 414, 417 (Tex. App.—Amarillo 1998, pet. denied). Wilson offered no evidence at the hearing to support any of the elements of injunctive relief.

Rule 683 also requires that an "order granting an injunction … shall set forth the reasons for its issuance[.]" Tex. R. Civ. P. 683. The trial court must set forth specific reasons, not merely conclusory statements, in the order granting temporary injunctive relief. *See In re Chaumette*, 456 S.W.3d 299, 305 (Tex. App.—Houston [1st Dist.] 2015, no pet.). The order must "set forth the reasons why the court deems it proper to issue the writ to prevent injury to the applicant in the interim; that is, the reasons why the court believes the applicant's probable right will be endangered if the writ does not issue." *Id.* (citing *Transp. Co. of Tex. v. Robertson Transps., Inc.*, 261 S.W.2d 549, 553 (Tex. 1953)). The trial court's order does not meet that standard.

The bond provisions of Rule 684 are also mandatory. Rule 684 requires that before the issuance of the temporary injunction, the applicant "shall execute and file with the clerk a bond to the adverse party." Tex. R. Civ. P.

684. A temporary injunction is subject to being declared void when a bond is not posted prior to its issuance. *See Qwest*, 24 S.W.3d at 337 (emphasis added) (citing *Lancaster v. Lancaster*, 155 Tex. 528, 291 S.W.2d 303, 308 (1956)). No bond was required here.

The trial court's July 28 order is not supported by evidence and fails to comply with any of the procedural or evidentiary requirements for a temporary injunction. If this Court reaches the issue, it should find the Order is void.

## Conclusion and Prayer

The Appellants respectfully pray that this Court dismiss the underlying suit as moot. If it reaches the merits, the Appellants pray that the Court reverse and vacate the order of July 28, 2015 and remand to the trial court for further proceedings, and for such other relief to which they may be entitled.

Respectfully submitted,

DONNA L. EDMUNDSON
City Attorney
JUDITH L. RAMSEY
Chief, General Litigation Section


By:    */s/ Kathleen Hopkins Alsina*
      Kathleen Hopkins Alsina
      Senior Assistant City Attorney
      State Bar No. 09977050
      Patricia L. Casey
      Senior Assistant City Attorney
      State Bar No. 03959075
      CITY OF HOUSTON LEGAL
      DEPARTMENT
      900 Bagby, 4th Floor
      Houston, Texas 77002
      832.393.6491 (Telephone)
      832.393.6259 (Facsimile)
      kate.alsina@houstontx.gov
      pat.casey@houstontx.gov
      judith.ramsey@houstontx.gov


*Attorneys for Appellants*

## Certificate of Compliance

I certify that this brief was prepared in MS Word 2010; the word-count function shows that, excluding those sections exempted under TRAP 9.4(i)(1), the brief contains 7,101 words.

*/s/ Kathleen Hopkins Alsina*
Kathleen Hopkins Alsina

## Certificate of Service

I hereby certify that on this 15th day of October, 2015, a true and correct copy of the foregoing has been served on counsel below via e-service:

James D. Pierce
1 Sugar Creek Center 1080
Sugar Land, TX 77478
jim@jamespierce.com

*Attorney for Appellee*

*/s/ Kathleen Hopkins Alsina*
Kathleen Hopkins Alsina


Tab A

For Official Governmental Use Only - Do Not Disseminate to the Public: 66397896 - Page 1 of 1

## NO. 2105-39706

| | | |
|---|---|---|
| **DAVID B. WILSON,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **vs.** | § | |
| | § | **HARRIS COUNTY, TEXAS** |
| **ANNISE PARKER, MAYOR, ANNA** | § | |
| **RUSSELL, CITY SECRETARY AND** | § | |
| **CITY OF HOUSTON** | § | **270th JUDICIAL DISTRICT** |

## ORDER

On July 24, 2015 the Court heard Plaintiff's Application for Writ of Mandamus. Concluding that Respondent Anna Russell in her capacity as City Secretary for the City of Houston has a nondiscretionary ministerial duty to count and certify the number of valid signatures contained in the petition submitted by Plaintiff and to certify and present the same to the Houston City Council, Plaintiff's Application for Writ of Mandamus is granted.

IT IS THEREFORE ORDERED, that Respondent Anna Russell in her capacity as City Secretary for the City of Houston shall count and certify to Houston City Council the number of valid signatures contained in the petition submitted by Plaintiff on or before 30 (thirty) days from the date the same were filed, namely July 9, 2015.

**FILED**
Chris Daniel
District Clerk

JUL 28 2015
Time:_____
Harris County, Texas
By_____
Deputy

Signed July 28, 2015.

_____
Judge Presiding

Tab B

Chapter 17 - EQUAL RIGHTS[1]

Footnotes:

--- (**1**) ---

**Editor's note—**Ord. No. 2014-530, § 2(Exh. A), adopted May 28, 2014, amended Ch. 17 in its entirety to read as herein set out. Formerly said chapter pertained to Fair housing and derived from Ord. No. 2006-412, § 2(Exh. A), adopted April 26, 2006. See the Code Comparative Table for a complete derivation.

**Cross reference—** Anti-discrimination provisions in city contract, § 15-16 et seq.

ARTICLE I. - IN GENERAL

Sec. 17-1. - Public policy declared.

It is the policy of the city that all of its residents and persons subject to its jurisdiction shall not be subject to discrimination based on an individual's sex, race, color, ethnicity, national origin, age, familial status, marital status, military status, religion, disability, sexual orientation, genetic information, gender identity or pregnancy.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-2. - Definitions.

In this chapter:

Age means, for purposes of sections that address non-discrimination, 40 or more years of age.

City employment and employment opportunities shall include, but are not limited to, decisions that adversely affect an employee's pay, status, position or assignment, including opportunities for overtime pay and advancement, and includes decisions regarding recruitment, job application procedures, referrals for employment, selection and hiring, appointment, compensation, promotions, demotions, transfers, layoffs, recalls, training, educational opportunities, and all forms of discipline, including indefinite suspensions/terminations.

Contractor means any person, including subcontractors, who through a contract or other arrangement, has received, is to receive, or is receiving public funds for work, goods, or services delivered or rendered to the city.

Disability means a mental or physical impairment that substantially limits at least one major life activity, a record of the impairment, or being regarded as having the impairment. This term does not include the current, illegal use of or addiction to a controlled substance as defined under state and federal law.

Discriminate means to intentionally distinguish, differentiate, separate, or segregate to the advantage or disadvantage of any person on the basis of a protected characteristic, except as required by federal or state law or court order.

Employee means an individual employed by an employer.

Employer means a person who has 50 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and the person's agent. The term does not include a person's contractor or vendor with respect to the conduct of the contractor or

vendor toward the employees of said contractor or vendor; the United States, or a corporation wholly owned by the government of the United States; a bona fide private membership club which is exempt from taxation under Section 501(c) of the Internal Revenue Code of 1954; the state, a state agency, or political subdivision; or a religious organization.

Familial status means the status of a person resulting from being domiciled with an individual younger than 18 years of age in regard to whom the person:

(1)   Is the parent or legal custodian; or

(2)   Has the written permission of the parent or legal custodian for domicile with the individual; or

(3)   Is in the process of obtaining legal custody.

Gender identity means an individual's innate identification, appearance, expression or behavior as either male or female, although the same may not correspond to the individual's body or gender as assigned at birth.

Genetic information means information about an individual's genetic tests, the genetic tests about an individual's family members, and the manifestation of disease or disorder in family members of an individual. The term does not include the age, sex, race, color, ethnicity, national origin, religion, or disability of any individuals.

Inspector general means the person in charge of the Office of the Inspector General created by Executive Order No. 1-39 or his or her designee.

Military status means a person who is serving or has served in the uniformed service, and who, if discharged, was discharged or released under conditions other than dishonorable. Uniformed services is defined as set forth in 20 C.F.R. 1002.5(o).

Person means an individual, corporation, partnership, association, labor organization, legal representative, mutual company, joint-stock company, trust, unincorporated organization, trustee or receiver.

Place of public accommodation means every business with a physical location in the city, whether wholesale or retail, which is open to the general public and offers for compensation any product, service, or facility. The term includes, but is not limited to, all hotels, motels, restaurants, bars, lounges, nightclubs or cabarets where food or beverages are sold or offered for sale, theaters, washaterias, bowling alleys, skating rinks, golf courses, and other places of public amusement, and all public conveyances, as well as the stations or terminals thereof. For purposes of article IV of this chapter, the leasing office, visitor parking area and model units of a multi-family housing facility shall not be considered a place of public accommodation.

Protected characteristic means an individual's sex, race, color, ethnicity, national origin, age, familial status, marital status, military status, religion, disability, sexual orientation, genetic information, gender identity or pregnancy.

Religion means all aspects of religious observance and practice, as well as belief.

Religious organization means:

(1)   A religious corporation, association, social service or society;

(2)   A school, college, university, or other educational institution or institution of learning, if the institution is, in whole or in substantial part, controlled, managed, owned, or supported by a religion, religious corporation, association or society; or the curriculum of the institution is directed toward the propagation of a religion; or

(3)   A nonprofit institution or organization operated, supervised, or controlled by a religious corporation, association, social service or society.

Retaliation, in connection with employment, means conduct or decisions that a reasonable employee would view as materially adverse and whose purpose or effect is to discourage employees from exercising their rights under this article, city policy, or law.

Sex means the biological differences between men and women, and gender.

Sexual orientation means the actual or perceived status of a person with respect to his or her sexuality.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Secs. 17-3—17-30. - Reserved.

ARTICLE II. - CITY EMPLOYMENT AND CITY SERVICES

Sec. 17-31. - Prohibition against discrimination in city employment.

It is the policy of the city that the city will not discriminate in city employment and employment opportunities on the basis of any protected characteristic. For purposes of this section, discriminate includes, but is not limited to, any act or demonstration of preference or antipathy in making decisions regarding employment that adversely affect an employee's pay, status, position, or assignment, including opportunities for overtime pay and advancement, and includes decisions regarding recruitment, job application procedures, referrals for employment, selection and hiring, appointment, compensation, promotions, demotions, transfer, retention, layoffs, recalls, training, educational opportunities, and all forms of discipline, including indefinite suspensions/terminations.

This policy applies to city officials and all employees regardless of civil service status, classification, pay grade, length of employment, or full-time or part-time status.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-32. - Prohibition against discrimination in city services.

It is the policy of the city that the city will not discriminate on the basis of any protected characteristic in authorizing or making available the use of city facilities or in the delivery of city programs, services or activities.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-33. - Enforcement.

(a) It is the policy of the city that no employee or official of the city shall engage in any act or practice prohibited by this article.

(b) An employee or official found in violation of this article shall be subject to disciplinary action up to and including indefinite suspension/termination or removal from office pursuant to applicable city ordinances, city charter provisions, executive orders, administrative procedures, laws, and policies. An employee who believes he or she has been subject to discrimination in violation of this article shall submit a written complaint to the inspector general not later than 180 days after the alleged violation occurs.

(c) The provisions of this article shall be enforced pursuant to applicable city ordinances, city charter provisions, executive orders, administrative procedures, laws, and policies.

(d)   The office of the inspector general is responsible for investigating all facts and circumstances that reasonably appear to constitute a violation of this article.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-34. - Retaliation prohibited.

No city employee or official shall retaliate against any person who has filed a complaint in good faith pursuant to this section. If the inspector general determines that retaliation has occurred, the city employee or official shall be subject to discipline, up to and including indefinite suspension.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Secs. 17-35—17-40. - Reserved.

ARTICLE III. - CONTRACTING

Sec. 17-41. - Prohibition against discrimination in awarding contracts.

It is the policy of the city that the city will not discriminate in the consideration, award, or administration of any contract entered into between the city and any person (including, but not limited to, any contractor, vendor, supplier, lessee, or lessor) for the provision of any works, goods, or services of any type to the city. The language of section 15-17 of this Code shall be included—by inclusion, attachment or reference—in every non-exempt contract entered into by the city. The language of this article shall not be interpreted to conflict with provisions of chapter 15 of this Code.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014; Ord. No. 2015-668, § 12, 7-8-2015)

Sec. 17-42. - Prohibition against discrimination in the performance of a contract; penalties; retaliation prohibited.

(a)   It shall be unlawful for any contractor to discriminate against any person on the basis of any protected characteristic, except as required by federal or state law or court order, in the performance of any contract entered into with the city. A person employed in connection with a city contract who has a good faith belief that he or she is the victim of discrimination may file a complaint with the inspector general on a form prescribed by the inspector general. Any person claiming to be aggrieved by an unlawful employment action in connection with the performance of a city contract shall file a verified complaint in writing no later than 180 days after the alleged violation.

(b)   If a contractor is found to have violated this section in connection with any city contract, the inspector general shall refer the matter to the city attorney for appropriate action to serve the best interests of the city, including the use of remedies provided by the city's contract with the contractor.

(c)   No contractor shall retaliate against any person who has filed a complaint in good faith pursuant to this section. If the inspector general determines that retaliation has occurred, he shall refer the matter to the city attorney pursuant to subsection (b) of this section.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-43. - Investigation of complaints of discrimination in the performance of a contract; procedures.

(a)  The office of the inspector general shall investigate the complaint and determine whether a violation as defined in this article has occurred. In addition to other investigative tools, the inspector general may take statements and inspect relevant records. If the inspector general is not able to obtain voluntary cooperation in connection with its investigation, he shall refer the matter to the city attorney for appropriate action.

(b)  If the complaint is found to be deficient, the inspector general shall dismiss the case. All investigations conducted pursuant to this article shall be conducted in a confidential manner and records of any such investigations shall be confidential to the extent permitted by law.

(c)  Upon completion of the investigation of the complaint, if the inspector general determines that the complaint alleges a violation of this article, the inspector general shall affirmatively engage in conciliation of the complaint. If no resolution is achieved, the inspector general shall refer the matter to the city attorney for appropriate action.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Secs. 17-44—17-50. - Reserved.

ARTICLE IV. - PUBLIC ACCOMMODATIONS

Sec. 17-51. - Prohibition against discrimination in public accommodations.

(a)  It shall be unlawful for any place of public accommodation or any employee or agent thereof to intentionally discriminate against any person on the basis of any protected characteristic, except as required by federal or state law or court order.

(b)  It shall be a defense to prosecution for discrimination on the basis of disability under this article that the alleged discrimination resulted from a condition or structural feature for which a variance had been received from the city under applicable ordinance or regulation. It shall also be a defense to prosecution for discrimination on the basis of accessibility that the place of public accommodation is in compliance with applicable state or federal law relating to accessibility.

(c)  It shall be unlawful for a person to file a complaint in bad faith under this article. For purposes of this article, bad faith means wholly without foundation in law or fact, or done solely for the purpose of harassment.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-52. - Investigation of alleged violations; procedures.

(a)  Any person claiming to be aggrieved by an unlawful public accommodation practice shall file a verified complaint in writing with the office of the inspector general not later than 180 days after the alleged violation occurred. Multiple complaints involving the same incident and alleging the same discrimination shall be treated as one alleged violation for investigation and penalty. If the complaint states a claim that is within the jurisdiction of a federal or state agency, the inspector general may refer the complaint to the appropriate agency for further action and discontinue the investigation of the complaint.

(b)  Except as to complaints that are referred to a federal or state agency, the office of the inspector general shall investigate the complaint and determine whether a violation as defined in this article has occurred. In addition to other investigative tools, the inspector general may take statements and inspect relevant records. If the inspector general is not able to obtain voluntary cooperation in connection with its investigation, the city attorney, in consultation with the inspector general, may

request city council to issue a subpoena or subpoena duces tecum to compel the attendance of a witness or the production of relevant materials or documents. City council may issue such subpoena if it determines that there is reasonable cause to believe that this article may have been violated.

(c) If the complaint is found to be deficient or untimely, the inspector general shall dismiss the case. All investigations conducted pursuant to this article shall be conducted in a confidential manner and records of any such investigations shall be confidential to the extent permitted by law. The inspector general shall complete the investigation of the complaint no later than one year after the filing of the complaint.

(d) Upon completion of the investigation of the complaint, if the inspector general determines that the complaint alleges a violation of this article, the inspector general shall affirmatively engage in conciliation of the complaint. If no such resolution is achieved, the inspector general shall refer the matter to the city attorney for appropriate action in accordance with this article.

(e) No finding, conciliation or adjudication under this article shall be admissible in connection with the city's licensing, permitting, or regulatory matters.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-53. - Effect of provisions on civil remedies.

This article shall neither add to nor detract from any civil remedies now available to persons complaining of discrimination under this article.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-54. - Exemptions.

This article shall not apply to:

(1) Any hotel, motel, restaurant, bar, lounge, nightclub, cabaret, theater, bowling alley, skating rink, golf course, or similar facility operated by a bona fide private club when the accommodations, advantages, facilities, and services of the entity are restricted to the members of such club and their guests and not for the purpose of evading this article;

(2) Any bona fide social, fraternal, educational, civic, or religious organization, or to any private kindergarten, day care center or nursery school, when the profits of such accommodations, advantages, facilities and services, above reasonable and necessary expenses, are solely for the benefit of such organization;

(3) Any facility owned or operated by a federal, state, county or other local governmental entity; or

(4) Discounts of any product, service, or facility for any person on the basis of age or military status.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-55. - Criminal penalties for violation.

(a) A person who violates a provision of this article commits a criminal offense, a Class C misdemeanor. A person is guilty of a separate criminal offense for each day or part of a day during which a violation is committed, continued, or permitted.

(b) A criminal offense under this article is punishable in municipal court by a fine of not less than $250.00 nor more than $500.00. In no event shall the aggregate of all fines relating to the same complaint filed by a complainant exceed $5000.00.

(c) A person prosecuted for a violation of this article shall be entitled to a trial by jury in municipal court.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Secs. 17-56—17-60. - Reserved.

ARTICLE V. - PRIVATE EMPLOYMENT

Sec. 17-61. - Prohibition against discrimination in employment.

(a)  It shall be unlawful for any employer to intentionally discriminate in employment and employment opportunities on the basis of any protected characteristic. For purposes of this section, discriminate includes but is not limited to, any intentional act or demonstration of preference or antipathy in making decisions regarding employment that adversely affect an employee's pay, status, position, or assignment, including opportunities for overtime pay and advancement, and includes decisions regarding recruitment, job application procedures, referrals for employment, selection and hiring, appointment, compensation, promotions, demotions, transfer, retention, layoffs, recalls, training, educational opportunities, and all forms of discipline, including terminations.

(b)  It shall be unlawful for any employer to retaliate against any person who has filed a complaint in good faith pursuant to this article.

(c)  An employer may assert any applicable affirmative defenses available under Texas or federal discrimination laws as a defense to prosecution under this article.

(d)  It shall be unlawful for a person to file a complaint in bad faith under this article. For purposes of this article, bad faith means wholly without foundation in law or fact, or done solely for the purpose of harassment.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-62. - Investigation of alleged violations; procedures.

(a)  Any employee claiming to be aggrieved by an unlawful employment practice shall file a verified complaint in writing with the office of the inspector general not later than 180 days after the alleged violation occurred. If the complaint states a claim that is within the jurisdiction of a federal or state agency, the inspector general shall refer the complaint to the appropriate agency for further action and discontinue the investigation of the complaint.

(b)  Except as to complaints that are referred to a federal or state agency, the office of the inspector general shall investigate the complaint and determine whether a violation as defined in this article has occurred. In addition to other investigative tools, the inspector general may take statements and inspect relevant records. If the inspector general is not able to obtain voluntary cooperation in connection with its investigation, the city attorney, in consultation with the inspector general, may request the city council to issue a subpoena or subpoena duces tecum to compel the attendance of a witness or the production of relevant materials or documents. City council may issue such subpoena if it determines that there is reasonable cause to believe that this article may have been violated.

(c)  If the complaint is found to be deficient or untimely, the inspector general shall dismiss the case. All investigations conducted pursuant to this article shall be conducted in a confidential manner and records of any such investigations shall be confidential to the extent permitted by law. The inspector general shall complete the investigation of the complaint no later than one year after the filing of the complaint.

(d)  Upon completion of the investigation of the complaint, if the inspector general determines that the complaint alleges a violation of this article, the inspector general shall affirmatively engage in

conciliation of the complaint. If no such resolution is achieved, the inspector general shall refer the matter to the city attorney for appropriate action in accordance with this article.

(e)   No finding, conciliation or adjudication under this article shall be admissible in connection with the city's licensing, permitting, or regulatory matters.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-63. - Effect of provisions on civil remedies.

This article shall neither add to nor detract from any civil remedies now available to persons complaining of discrimination under this article.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-64. - Criminal penalties for violation.

(a)   A person who violates a provision of this article commits a criminal offense, a Class C misdemeanor. A person is guilty of a separate criminal offense for each day or part of a day during which a violation is committed, continued, or permitted.

(b)   A criminal offense under this article is punishable in municipal court by a fine of not less than $250.00 nor more than $500.00. In no event shall the aggregate of all fines relating to the same complaint filed by a complainant exceed $5000.00.

(c)   A person prosecuted for a violation of this article shall be entitled to a trial by jury in municipal court.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Secs. 17-65—17-100. - Reserved.

ARTICLE VI. - FAIR HOUSING

DIVISION 1. - GENERAL PROVISIONS

Sec. 17-101. - Prohibition against discrimination in housing.

It is the policy of the City of Houston to promote housing opportunities for all persons. Such policy is established upon the recognition of the rights of each individual to obtain housing without regard to a protected characteristic; and further that the denial of such rights through considerations based on a protected characteristic is detrimental to the health, safety, and welfare of the inhabitants of the city and constitutes an unjust denial or deprivation of such rights which are within the power and the proper responsibility of the city to prevent.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-102. - Purpose.

The purposes of this article are:

(1)   To provide for fair housing practices in the city;

(2) To create a procedure for investigating and settling complaints of discriminatory housing practices and any residential real estate-related transactions; and

(3) To provide rights and remedies substantially equivalent to those granted under the Federal Fair Housing Act.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-103. - Office established.

There is hereby established within the housing and community development department the office of fair housing. The mission of the office of fair housing shall be to monitor and evaluate fair housing opportunities in the city and to hear fair housing complaints under this article.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-104. - General duties of the office of fair housing.

The duties of the fair housing staff shall be:

(1) To study the nature and extent of discriminatory housing practices in both the private and public sectors;

(2) To evaluate and assess the city's activities in connection with the development of fair housing opportunities in the city;

(3) To recommend to the mayor and city council reasonable provisions and programs to further fair housing opportunities in the city; and

(4) To investigate, process, and hear fair housing complaints under division 5 of this article, and complaints referred by federal or state agencies that are filed under state or federal housing laws.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-105. - Fair housing administrator.

(a) There is hereby created the office of fair housing administrator, who shall be in charge of the office of fair housing. The fair housing administrator, who shall be appointed by the mayor and confirmed by the city council, shall have the responsibility for implementing and enforcing this article and may establish such rules and regulations as are determined necessary to perform the duties of that office.

(b) The fair housing administrator shall cooperate with the Secretary of Housing and Urban Development and the Attorney General of the United States in the enforcement of the federal Fair Housing Act, and may assist the secretary or attorney general in any way consistent with the policy of this article. The fair housing administrator is encouraged to cooperate with the Texas Workforce Commission, Civil Rights Division, in the enforcement of the Texas Fair Housing Act.

(c) The fair housing administrator shall treat a complaint referred by the Secretary of Housing and Urban Development or the Attorney General of the United States under the federal Fair Housing Act, or by the Texas Workforce Commission, Civil Rights Division, under the Texas Fair Housing Act, as a complaint filed under this article. No action will be taken under this article against a person for a discriminatory housing practice if the referred complaint was filed with the governmental entity later than one year after an alleged discriminatory housing practice occurred or terminated.

(d) The fair housing administrator may order discovery in aid of investigations under this article. Such discovery may be ordered to the same extent and is subject to the same limitations as would apply if the discovery were ordered in aid of a civil action in a state district court of Harris County, Texas.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Secs. 17-106—17-110. - Reserved.

DIVISION 2. - DEFINITIONS

Sec. 17-111. - General definitions.

The following words, terms, and phrases, when used in this article, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning:

Accessible means capable of being approached, entered, and used by a person with a physical disability

Accessible route means a continuous unobstructed path connecting accessible elements and spaces in a housing accommodation that can be negotiated by a person with a severe disability using a wheelchair and that is also safe for and usable by a person with other disabilities.

Aggrieved person means a person who claims to have been injured by a discriminatory housing practice or believes that a person will be injured by a discriminatory housing practice that is about to occur.

Building entrance on an accessible route means an accessible entrance to a covered multi-family dwelling that is connected by an accessible route to public transportation stops, to accessible parking and passenger loading zones, or to the public streets or sidewalks, if available.

Complainant means a person, including the fair housing administrator, who files a complaint under section 17-131 of this Code.

Conciliation means the attempted resolution of issues raised by a complaint or by the investigation of the complaint, through informal negotiations involving the aggrieved person, the complainant if different from the aggrieved person, the respondent and the fair housing administrator.

Conciliation agreement means a written agreement setting forth the resolution of the issues in the conciliation.

Covered multi-family dwelling means a building consisting of 4 or more dwelling units if the building has one or more elevators; and a ground floor dwelling unit in any other building consisting of four or more dwelling units.

Defense means a defense to criminal prosecution in municipal court as explained in the Texas Penal Code. Defense also means, where specifically provided, an exemption from a civil action.

Discriminatory housing practice means conduct that is an offense under division 3 of this article.

Dwelling means any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof.

Dwelling unit means a single unit of residence for a family.

Fair housing administrator means the fair housing administrator of the fair housing office designated to enforce and administer this article and includes the fair housing administrator's designated representative and the inspector general.

Federal Fair Housing Act means the Fair Housing Act of 1968, 42 U.S.C. § 3601, et seq., as amended.

Housing accommodation means:

a. Any building, structure, or part of a building or structure that is occupied, or designed or intended for occupancy as a residence for one or more families; and

b. Any vacant land that is offered for sale or lease for the construction or location of a building, structure, or part of a building or structure described by part a of this definition.

Rent means and includes to lease, sublease, let or otherwise grant for consideration the right to occupy premises not owned by the occupant. Residential real estate-related transaction means:

a. The making or purchasing of loans or the providing of other financial assistance:

[1] For purchasing, constructing, improving, repairing, or maintaining a housing accommodation; or

[2] Secured by residential real estate; or

b. The selling, brokering, or appraising of residential real property.

Respondent means a person identified in a complaint or charge as having committed a discriminatory housing practice under this article.

Texas Fair Housing Act means the act set forth in Chapter 301, Texas Property Code.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

DIVISION 3. - DISCRIMINATORY HOUSING PRACTICES

Sec. 17-112. - Discriminatory housing practices.

(a) A person commits an offense if he or she, because of a protected characteristic:

(1) Refuses to negotiate with a person for the sale or rental of a housing accommodation or otherwise denies or makes unavailable a housing accommodation to a person;

(2) Refuses to sell or rent, or otherwise makes unavailable, a housing accommodation to another person after the other person makes an offer to buy or rent the accommodation; or

(3) Discriminates against a person in the terms, conditions, or privileges of, or in providing a service or facility in connection with, the sale or rental of a housing accommodation.

(b) A person commits an offense if he or she, because of a protected characteristic:

(1) Represents to a person that a housing accommodation is not available for inspection, sale, or rental if the accommodation is available;

(2) Discriminates against a prospective buyer or renter in connection with the showing of a housing accommodation; or

(3) With respect to a multiple listing service, real estate brokers' organization, or other business relating to selling or renting housing accommodations:

a. Denies a person access to or membership in the business; or

b. Discriminates against a person in the terms or conditions of access to or membership in the business.

(c) A person commits an offense if he or she:

(1) For profit, induces or attempts to induce another person to sell or rent a housing accommodation by a representation that a person of a protected characteristic is in proximity to, is present in, or may enter into the neighborhood in which the housing accommodation is located;

(2) Makes an oral or written statement indicating a preference or a policy of discrimination based on a protected characteristic; or

(3) Prints or publicizes or causes to be printed or publicized an advertisement that expresses a preference or policy of discrimination based on a protected characteristic in the selling or renting of a housing accommodation.

(d) A person who engages in a residential real estate-related transaction commits an offense if he or she, because of a protected characteristic, discriminates against a person:

(1) In making a residential real estate-related transaction available; or

(2) In the terms or conditions of a residential real estate-related transaction.

(e) A person commits an offense if he or she:

(1) Discriminates in the sale or rental of a housing accommodation to any buyer or renter because of a disability of:

a. That buyer or renter;

b. A person residing in or intending to reside in the housing accommodation after it is sold, rented, or made available; or

c. Any person associated with that buyer or renter; or

(2) Discriminates against any person in the terms, conditions, or privileges of sale or rental of a housing accommodation, or in the provision of services or facilities in connection with the housing accommodation, because of a disability of:

a. That person;

b. A person residing in or intending to reside in the housing accommodation after it is sold, rented, or made available; or

c. Any person associated with that person.

(f) A person commits an offense if he or she:

(1) Refuses to permit, at the expense of a person with a disability, reasonable modifications of existing premises occupied or to be occupied by the person with a disability, if the modifications may be necessary to afford the person with a disability full use of the premises; except that, in the case of a rental, the landlord may, where reasonable to do so, condition permission for modification on the renter's agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted;

(2) Refuses to make reasonable accommodations in rules, policies, practices, or services when the accommodations may be necessary to afford a person with a disability equal opportunity to use and enjoy a housing accommodation;

(3) Fails to design or construct a covered multi-family dwelling for first occupancy after March 13, 1991, in such a manner as to have at least one building entrance on an accessible route, unless it is impractical to do so because of the terrain or unusual characteristics of the site; or

(4) Fails to design and construct a covered multi-family dwelling, for first occupancy after March 13, 1991, in such a manner that:

a. The public use and common use portions of the dwellings are readily accessible to and usable by a person with a disability;

b. All the doors designed to allow passage into and within all premises within the dwelling are sufficiently wide to allow passage by a person with a disability in a wheelchair; and

c. All dwellings contain the following features of adaptive design:

[1] An accessible route into and through the dwelling unit;

[2] Light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;

[3] Reinforcements in the bathroom walls to allow installation of grab bars; and

[4] Kitchens and bathrooms laid out in such a manner that an individual in a wheelchair can maneuver about the space.

It shall be an affirmative defense to prosecution for discrimination on the basis of disability under items (3) and (4) of this subsection for failing to design or construct a covered multi-family dwelling if the construction of the covered multi-family dwelling was in compliance with applicable state or federal laws relating to disability at the time of construction.

(g) A person commits an offense if he or she coerces, intimidates, threatens, or otherwise interferes with any person in the exercise or enjoyment of, or on account of that person having exercised or enjoyed, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this article.

(h) A person commits an offense if he or she retaliates against any person for making a complaint or testifying, assisting, or participating in any manner in a proceeding under this article.

(i) The provisions of this article do not apply to discrimination based on age.

(j) It shall be unlawful for a person to file a complaint in bad faith under this article. For purposes of this article, bad faith means wholly without foundation in law or fact, or done solely for the purpose of harassment.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Secs. 17-113—17-120. - Reserved.

DIVISION 4. - EXEMPTIONS

Sec. 17-121. - Certain sales and rentals exempted.

(a) Except as provided in subsection (b) of this section, and in accordance with federal law:

(1) The sale or rental of a single-family house sold or rented by an owner does not constitute an unlawful action under this article if the owner does not:

a. Own more than 3 single-family houses at any one time; or

b. Own any interest in, nor is there owned or reserved on his or her behalf, under any express or voluntary agreement, title to or any right to any part of the proceeds from the sale or rental of more than 3 single family houses at any time; and

(2) The sale or rental of rooms or units in a dwelling containing living quarters occupied or intended to be occupied by no more than 4 families living independently of each other does not constitute an unlawful act under this article if the owner maintains and occupies one of the living quarters as the owner's residence.

(b) The exemption in item (1) of subsection (a) of this section applies only when there is one sale or rental in a 24-month period, if:

    (1) The owner was not the most recent resident of the house at the time of or prior to the sale or rental;

    (2) The private, bona fide individual owner has sold or rented the house without the use in any manner of the sales or rental facilities or the sales or rental services of any real estate broker, agent, or salesman, or of such facilities or services of any person in the business of selling or renting dwellings, or of any employee or agent of any such broker, agent, salesman, or person; and

    (3) The private, bona fide individual owner has sold or rented the dwelling without the publication, posting or mailing, after notice, of any advertisement or written notice in violation of the federal Fair Housing Act.

Nothing in this section shall prohibit the use of attorneys, escrow agents, abstractors, title companies, and other professional assistance as necessary to perfect transfer of title.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-122. - Religious organizations and private clubs exemption.

(a) This article does not prohibit a religious organization or a nonprofit institution or organization operated, supervised, or controlled by or in conjunction with a religious organization from, in accordance with federal law:

    (1) Limiting the sale, rental, or occupancy of dwellings that it owns or operates for other than a commercial purpose to persons of the same religion; or

    (2) Giving preference to persons of the same religion, unless membership in the religion is restricted because of a protected characteristic.

(b) This article does not prohibit a private club not open to the public that, as an incident to its primary purpose, provides lodging that it owns or operates for other than a commercial purpose, from limiting the rental or occupancy of that lodging to its members or from giving preference to its members.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-123. - Housing for the elderly exempted.

The provisions of this article relating to familial status, age and pregnancy do not apply to housing for older persons.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-124. - Appraisal exemption.

This article does not prohibit a person engaged in the business of furnishing appraisals of residential real property from taking into consideration factors other than a protected characteristic.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-125. - Effect on other law.

This article does not affect a requirement of nondiscrimination in any other ordinance or state or federal law.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-126. - Effect on deed restrictions and other laws.

This article shall not be interpreted to interfere with the enforcement of a lawful deed restriction or a limitation on the number of persons who may occupy a dwelling unit that is otherwise permissible under federal or state law.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Secs. 17-127—17-130. - Reserved.

DIVISION 5. - ADMINISTRATIVE/COURT ENFORCEMENT

Sec. 17-131. - Complaints.

(a) Complaints may be filed not later than one year after an alleged discriminatory housing practice has occurred or terminated. Any aggrieved person may file a complaint. The complaint may be filed with the assistance of an authorized representative of an aggrieved person, including any organization acting on behalf of an aggrieved person. The fair housing administrator may also file a complaint if he has reasonable cause to believe that a person has committed a discriminatory housing practice. If the complaint, other than a complaint referred pursuant to subsection (b) of this section, states a claim that is within the jurisdiction of a federal or state agency, the fair housing administrator may refer the complaint to the appropriate agency for further action and discontinue the investigation of the complaint.

(b) The fair housing administrator shall treat complaints referred by the Secretary of Housing and Urban Development or the Attorney General of the United States under the federal Fair Housing Act or by the Texas Workforce Commission, Civil Rights Division, under the Texas Fair Housing Act as though filed under subsection (a) above.

(c) A complaint must be made:

   (1) In writing; and

   (2) Under oath or affirmation by an aggrieved person, or by an individual on behalf of an aggrieved person, stating: "I declare under penalty of perjury that the foregoing is true and correct."

(d) Each complaint must contain substantially the following information:

   (1) The name and address of the respondent.

   (2) Name, address and signature of the complainant.

   (3) The name and address of the aggrieved person if different from the complainant.

   (4) Date of the occurrence or termination of the discriminatory housing practice and the date of filing of the complaint.

   (5) A description and address of the dwelling that is involved in a discriminatory housing practice.

   (6) A concise statement of the facts constituting the alleged discriminatory housing practice, including the basis for the discrimination (specifying the relevant protected characteristic).

(e) A complaint may be reasonably and fairly amended at any time.

(f) Except as to complaints that are referred to a federal or state agency, within ten days after the filing of a complaint, the fair housing administrator shall:

(1) Give the complainant, and the aggrieved person if different from the complainant, written notice that the complaint has been received; and

(2) Advise the complainant, and aggrieved person if different from the complainant, of the time limits applicable to the complaint and of any rights and choice of forums under this article.

(g) Not later than the 10th day after the filing of the complaint, the fair housing administrator shall serve on each respondent:

(1) A written notice that a complaint alleging the commission of a discriminatory housing practice has been filed against the respondent; identifying the alleged discriminatory housing practice; advising the respondent of the procedural rights and obligations of a respondent under this article, including the right to file a written, signed and verified informal answer to the complaint within ten days after service of notice of the complaint; and setting out the rights and remedies of the aggrieved person under the article; and

(2) A copy of the original complaint.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-132. - Answer.

(a) Not later than the 10th day after receipt of the notice and copy of the complaint under subsection (g) of section 17-131 of this Code, a respondent shall file an answer to the complaint.

(b) An answer to a complaint:

(1) Must be made in writing;

(2) May include the assertion of any defense that might be available to a defendant in a court of law;

(3) Must be signed and affirmed by the respondent; and

(4) Must include an affirmation that states: "I declare under penalty of perjury that the foregoing is true and correct."

(c) An answer may be reasonably and fairly amended at any time before the fair housing administrator refers the matter to the city attorney for prosecution. The fair housing administrator shall furnish a copy of each amended complaint or answer, respectively, to each respondent or complainant, and to any aggrieved person who is not the complainant, as promptly as is practicable.

(d) The filing of an answer does not inhibit the investigation of a complaint.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-133. - Investigation.

(a) If the federal government or the state of Texas has referred a complaint to the fair housing office or has deferred jurisdiction over the subject matter of a complaint to the fair housing office, the fair housing office shall initiate an investigation of the allegations set forth in the complaint.

(b) The fair housing office shall investigate all complaints within 30 days after a complaint is filed, and, except as provided by subsection (c) of this section, shall complete an investigation within 100 days after the date of filing of the complaint, and shall dispose of all administrative proceedings related to the investigation not later than one year after the date the complaint is filed.

(c) The fair housing administrator shall seek the voluntary cooperation of any person to:

    (1) Obtain access to premises, records, documents, individuals, and any other possible source of information;

    (2) Examine, record, and copy necessary materials; and

    (3) Take and record testimony or statements of any person reasonably necessary for the furtherance of the investigation.

(d) If the fair housing office is unable to complete an investigation within the time periods prescribed by subsection (b) of this section the fair housing administrator shall notify the complainant and the aggrieved person, if different from the complainant, and the respondent, in writing, of the reasons for the delay.

(e) The fair housing administrator shall assist in the investigation of complaints submitted to the fair housing office, and in preparing reports required under this article.

(f) Upon completion of an investigation where the fair housing administrator has made a determination that a discriminatory housing practice has in fact occurred, if the fair housing administrator is unable to secure from the respondent an acceptable conciliation agreement, then the fair housing administrator shall refer matters within the jurisdiction of HUD to HUD and refer all other matters to the city attorney for appropriate action in accordance with this article.

(g) The fair housing administrator and the city attorney are authorized and encouraged to cooperate with the Secretary of Housing and Urban Development pursuant to the provisions of Title VIII of the Federal Fair Housing Act and may render such service to the secretary as they shall deem appropriate to further the policies of this article and may accept reimbursement from the Secretary for services rendered to assist in carrying out the provisions of the above cited federal law.

(h) An investigation shall remain open until a reasonable cause determination is made under section 17-137 of this Code, a conciliation agreement is executed and approved under section 17-135 of this Code, or the complaint is dismissed under section 17-139 of this Code. Unless impracticable to do so, the fair housing administrator shall complete the investigation within the 100-day period prescribed in subsection (b) of this section.

(i) This section does not limit the authority of the fair housing administrator to conduct such other investigations or to use such other lawful enforcement procedures as the fair housing administrator considers necessary to enforce this article.

(j) The fair housing administrator shall prepare a final investigative report showing:

    (1) The names of and dates of contact with witnesses;

    (2) A summary, including dates, of correspondence and other contacts with the aggrieved person and the respondent;

    (3) A summary description of other pertinent records;

    (4) A summary of witness statements; and

    (5) Answers to interrogatories, if any.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-134. - Additional or substitute respondent.

(a) The fair housing administrator may join a person not named in the complaint as an additional or substitute respondent if, in the course of the investigation, the fair housing administrator determines that the person should be accused of a discriminatory housing practice. Within ten days after the fair housing administrator's determination, any additional or substitute respondent shall be served with notice and a copy of the complaint, as provided in subsection (g) of section 17-131 of this Code.

(b)  In addition to the information required in the notice under subsection (c) of section 17-91 of this Code the fair housing administrator shall include in the notice to a respondent joined under this section an explanation of the basis for the determination that the person is properly joined as a respondent. The added respondent shall be given an opportunity to file an answer to the complaint within ten days after receipt of the notice, as provided in section 17-132 of this Code.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-135. - Conciliation.

(a)  The fair housing administrator shall, during the period beginning with the filing of a complaint and ending with issuance of charge under section 17-138 of this Code, the dismissal of complaint under section 17-139 of this Code, or the dismissal of a criminal action in municipal court, after consulting with the city attorney, where feasible, engage in conciliation with respect to the complaint. In conciliating a complaint, the administrator shall try to achieve a just resolution and obtain assurances that the respondent will satisfactorily remedy any violation of the aggrieved person's rights and take action to assure the elimination of both present and future discriminatory housing practices.

(b)  The fair housing administrator shall conduct a conciliation negotiation of any complaint received by the fair housing office, provided that all final conciliation agreements shall be submitted to the city attorney for review and approval.

(c)  If a conciliation agreement is executed under this section, a party to the agreement may not be prosecuted in municipal court, nor may the fair housing administrator issue a charge against a party, for the discriminatory housing practice specified in the conciliation agreement under this section unless the fair housing administrator determines that the agreement has been violated and notifies the city attorney in writing of the violation.

(d)  A conciliation agreement must be in writing in the form approved by the city attorney and must be signed and verified by the respondent, the complainant, and the aggrieved person if different from the complainant, subject to approval of the fair housing administrator who shall indicate approval by signing the agreement. A conciliation agreement is deemed executed upon its signing and verification by all parties to the agreement.

(e)  A conciliation agreement executed under this section must contain:

(1)  Identification of each discriminatory housing practice and each corresponding respondent that gives rise to the conciliation agreement under this section that the parties agree to make subject to the limitation on prosecution in subsection (c) of this section;

(2)  An identification of the housing accommodation subject to the conciliation agreement;

(3)  A statement that each party entering into the conciliation agreement agrees not to violate this article or the conciliation agreement; and

(4)  Any other term or condition agreed to by the parties.

(f)  The conciliation agreement may provide for binding arbitration or other method of dispute resolution. Dispute resolution resulting from a conciliation agreement may authorize appropriate relief, including monetary relief (in the form of damages, including humiliation and embarrassment, and attorney fees) and equitable relief (such as access to the housing accommodation at issue, or to a comparable housing accommodation, and provision of services at facilities in connection with a housing accommodation).

(g)  Nothing said or done in the course of conciliation may be made public or used as evidence in a subsequent proceeding under this article without the written consent of the persons concerned.

(h)  After completion of the investigation, the fair housing administrator shall make available to the aggrieved person and the respondent, at any time, information derived from the investigation as well as the final investigative report.

(i) A conciliation agreement may be made public, unless the aggrieved person and the respondent request non-disclosure and the fair housing administrator determines that disclosure is not required to further the purposes of this article. Notwithstanding a determination that disclosure of a conciliation agreement is not required, the fair housing administrator may publish tabulated descriptions of the results of all conciliation efforts.

(j) If the aggrieved person brings a civil action under a local, state, or federal law seeking relief for the alleged discriminatory housing practice and the trial in the action begins, the fair housing administrator shall terminate efforts to conciliate the complaint unless the court specifically requests assistance from the fair housing administrator. The fair housing administrator may also terminate efforts to conciliate the complaint if:

(1) The respondent fails or refuses to confer with the fair housing administrator;

(2) The aggrieved person or the respondent fails to make a good faith effort to resolve any dispute; or

(3) The fair housing administrator finds, for any reason, that voluntary agreement is not likely to result.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-136. - Violation of conciliation agreement.

(a) A person commits an offense if, after the person executes a conciliation agreement under section 17-135 of this Code, he or she violates any term or condition contained in the agreement.

(b) It is no defense to criminal prosecution in municipal court under this section that, with respect to a discriminatory housing practice that gave rise to the conciliation agreement under section 17-135 of this Code:

(1) The respondent did not commit the discriminatory housing practice; or

(2) The fair housing administrator did not have probable cause to believe the discriminatory housing practice was committed.

(c) If the fair housing administrator determines that a conciliation agreement has been violated, the fair housing administrator shall give written notice to all parties subject to the agreement.

(d) When the fair housing administrator has reasonable cause to believe that a respondent has breached a conciliation agreement, the fair housing administrator shall refer the matter to the city attorney for appropriate action in accordance with this article.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-137. - Reasonable cause determination.

(a) A panel consisting of a fair housing investigator representative, the city attorney, and the fair housing administrator, shall determine based on all the facts whether reasonable cause exists to believe that a discriminatory housing practice has occurred or is about to occur.

(b) The panel shall make the determination under subsection (a) of this section not later than the 100th day after the date a complaint is filed unless:

(1) It is impracticable to make the determination; or

(2) The city attorney has approved a conciliation agreement relating to the complaint.

(c) If it is impracticable to make the determination within the time period provided by subsection (b) of this section, the panel shall notify the complainant, and the aggrieved person if different from the complainant, and the respondent, in writing, of the reasons for the delay.

(d) If the city attorney determines that no reasonable cause exists to believe that a discriminatory housing practice has occurred, the city attorney shall issue to the fair housing administrator a short and plain written statement of the facts upon which the city attorney based the no reasonable cause determination. If the city attorney issues such a statement, the panel shall automatically determine that no reasonable cause exists to believe that a discriminatory practice has occurred or is about to occur.

(e) If the panel determines that reasonable cause exists to believe that a discriminatory housing practice has occurred or is about to occur, the city attorney shall proceed with appropriate enforcement action.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-138. - Charge.

(a) A charge issued under section 17-137 of this Code:

(1) Must consist of a short and plain statement of the facts upon which the fair housing administrator and the city attorney have found reasonable cause to believe that a discriminatory housing practice has occurred or is about to occur;

(2) Must be based on the final investigative report; and

(3) Need not be limited to the facts or grounds alleged in the complaint.

(b) Not later than the 20th day after the fair housing administrator issues a charge, the fair housing staff shall send a copy of the charge to:

(1) Each respondent; and

(2) Each aggrieved person on whose behalf the complaint was filed.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-139. - Dismissal.

(a) A complaint shall be dismissed by the fair housing administrator during the investigation and prior to referral to the city attorney when the fair housing administrator determines that:

(1) The complaint was not timely filed;

(2) The location of the alleged discriminatory housing practice is not within the city's jurisdiction;

(3) The alleged discriminatory housing practice is not a violation of this article;

(4) The complainant, or the aggrieved person if different from the complainant, refuses to cooperate with the fair housing administrator in the investigation of the complaint or enforcement of the executed conciliation agreement; or

(5) The complainant, or the aggrieved person if different from the complainant, cannot be located after the fair housing administrator has performed a reasonable search.

(b) A criminal action may be dismissed by a municipal judge upon motion of the city attorney, if after the city attorney files the action charging a respondent with a discriminatory housing practice, a conciliation agreement is executed under section 17-135 of this Code before the trial begins in municipal court.

(c) The fair housing administrator shall notify the complainant, the aggrieved person if different from the complainant, and the respondent of the dismissal of the complaint, including a written statement of facts, and may make public disclosure of the dismissal unless the respondent requests that no public disclosure be made.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)

Sec. 17-140. - Criminal penalties for violation.

(a) A person who violates a provision of this article commits a criminal offense, a Class C misdemeanor. A person is guilty of a separate criminal offense for each day or part of a day during which a violation is committed, continued, or permitted.

(b) A criminal offense under this article is punishable in municipal court by a fine of not less than $250.00 nor more than $500.00. In no event shall the aggregate of all fines relating to the same complaint filed by a complainant exceed $5000.00.

(c) A person prosecuted for a violation of this article shall be entitled to a trial by jury in municipal court.

(Ord. No. 2014-530, § 2(Exh A), 5-28-2014)



Tab C

FILED
15-0636
8/24/2015 8:29:39 AM
tex-6612826
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

No. _____

_____

IN THE COURT SUPREME COURT OF TEXAS

_____

IN RE: DAVID B. WILSON,
Realtor

_____

*Original Proceeding Related to Annise D. Parker, Mayor, Anna Russell, City Secretary, and City of Houston v. David B. Wilson, 01-15-00687-CV, First Court of Appeals, Trial Court Number 2015-39706, 270th District Court of Harris County, Texas*

_____

ORIGINAL EMERGENCY
PETITION FOR WRIT OF MANDAMUS

_____

***Oral Argument Waived***

James D. Pierce
SBN 15994500
1 Sugar Creek Center 1080
Sugar Land, TX 77478
713-650-0150
jim@jamespierce.com
Attorney for Realtor
David B. Wilson

## IDENTITY OF PARTIES AND COUNSEL

For the sake of simplicity the parties are sometimes referred by their name. The following is a complete list of all the parties and their attorneys.

| Relator | Respondents |
|---|---|
| David B. Wilson | Annise D. Parker, Mayor, Anna Russell, City Secretary, and City of Houston |
| | |
| Attorney: | Attorneys |
| | Donna Edmundson City Attorney |
| Mr. James D. Pierce | Judith L. Ramsey Chief, General |
| SBN: 06702350 | Litigation Section |
| Attorney At Law | Kathleen Hopkins |
| 1 Sugar Creek Center 1080 | Alsina Senior Assistant City Attorney |
| Sugar Land, TX 77478 | State Bar No. 09977050 |
| 713-650-0150 | Patricia L. Casey Senior Assistant City |
| 713-650-0146 Fax | Attorney |
| | State Bar No. 03959075 CITY OF HOUSTON LEGAL DEPARTMENT 900 Bagby, Fourth Floor Houston, Texas 77002 832.393.6491 (Telephone) 832.393.6259 (Facsimile) kate.alsina@houstontx.gov pat.casey@houstontx.gov |

## WAIVER OF ORAL ARGUMENT

Realtor respectfully requests emergency relief and believes that oral arguement would delay justice even more than it has already been delayed in this matter. Realtor waives oral argument.

# TABLE OF CONTENTS

Cover Page                                                          1

Identity of Parties and Counsel                                     2

Waiver Oral Argument                                                3

This Table of Contents                                              4

Index of Authorities                                                6

Statement of the Case                                               8

Issues Presented                                                    10

Statement of Facts                                                  12

Statement of Jurisdiction                                           14

Summary of Argument                                                 15

Argument & Authorities                                              17

Prayer                                                              22

Verification of David Wilson                                        23

Certificate of Compliance & TRAP 52.3(J) Certification              24

Certificate of Service                                              25

Appendix 1 Order Granting Mandamus (270th Judicial District Harris County)

Appendix 2 Order from First Court of Appeals Questioning Jurisdiction but Denying Motion to Dismiss.

Appendix 3 Notice of Appeal filed by the Real Parties in Interest

Appendix 4 David B. Wilson's Emergency Motion to Dismiss and Alternatively to Refer Enforcement of Mandamus to Trial Court

Appendix 5 Response to David B. Wilson's Emergency Moiton to Dismiss filed in in Annise D. Parker, Mayor, Anna Russell, City Secretary, and City of Houston v. David B. Wilson, 01-15-00687-CV, First Court of Appeals with copies of Record From David B. Wilson vs. Annise D. Parker, Mayer, Anna Russell City Secretary and City of Houston, District Court Number 2015-39706, 270th District Court of Harris County, Texas

# INDEX OF AUTHORITIES

**Cases:**

Bally Total Fitness Corp. v. Jackson, 53 S.W.3d 352 (Tex. 2001).

CMH Homes v. Perez, 340 S.W.3d 444, 447–48 (Tex. 2011)

In re Cullar, 320 S.W. 3d 560, 564 (Tex.App.-Dallas 2010)

In Re F.N. Williams, Sr, and Jared Woodfill, No. 15-00581 (Tex. August 19, 2015)

In re Woodfill, __ S.W.3d __, __, 2015 WL 4498229  (Tex. 2015) (per curiam)

In Re Roof, 130 S.W. 3d 414, 416 (Tex.App.-Houston [14th Dist.] 2004).

M.D. Anderson v. City of Seven Points, 806 S.W. 2d 791 (Tex. 1991).

O'Conner v. First Court of Appeals, 837 S.W. 2d 94, 97 (Tex. 1992).

Paulsen v. Yarrell, 455 S.W.3d 192, 195 (Tex. App.—Houston [1st Dist.] 2014, no pet.)

Rusk State Hosp. v. Black, 392 S.W.3d 88, 92 (Tex. 2012));

Turner v. Pruitt, 161 Tex. 532, 342 S.W.2d 422, 423 (1961).

Womack v. Berry, 156 Tex. 44, 291 S.W.2d 677, 682 (1956);

**Statutes & Rules**

Texas Constitution Article 5, Section 6

Tex. Civ. Pract. & Rem. Code Section 6.002

Tex. Civ. Prac. & Rem. Code Ann. § 51.014

Texas Civil Practice & Remedies Code Chapter 65

Texas Election Code § 277.001

Texas Election Code Section 273.061

Texas Government Code § 9.004(a)

Texas Government Code Section 22.221(a)

Tex. R. App. P. 52.

Tex. R. App. P. 29.1(b)

## STATEMENT OF THE CASE

This is yet another attempt by the City of Houston and its officials to not comply with ministerial duties to count and certify the petitions presented by over 22,000 voters for a proposed amendment to Houston's City Charter.  See In Re F.N. Williams, Sr, and Jared Woodfill, No. 15-00581 (Tex. August 19, 2015);  In re Woodfill, __ S.W.3d __, __, 2015 WL 4498229 (Tex. 2015) (per curiam) . The 270th District Court of Harris County issued an interlocutory Mandamus order directing Anna Russell, City Secretary to perform her ministerial duty to count and certify to Houston City Counsil the number of valid signatures contained in the petition submitted by Realtor. Appendix "1"  Just prior to the deadline to comply, the Relator filed a notice of interlocutory appeal and claimed the 270th District Court Order was automatically stayed. Appendix "3"  Realtor moved to dismiss the appeal in the First Court of Appeals for lack of jurisdiction. Appendix "4"  The First Court of Appeals recognized it likely lacked jurisdiction, however, gave Respondent ten days to respond to its concern that it lacked jurisdiction. Appendix "2" Since the additional ten days can result in the inability to put the proposed Charter Amendment on the ballot timely, Realtor seeks Mandamus from this Court to either 1) order the First Court of Appeals to dismiss, immediately for want of jurisdiction, or alternatively this

Court issue a writ of mandamus directing the Anna Russell, City Secretary to immediately perform her ministerial duty to count and certify to Houston City Counsil the number of valid signatures contained in the petitions submitted by Realtor.

## ISSUES PRESENTED

Does a Texas Court of Appeal have jurisdiction to review by interlocutory appeal an interlocutory order granting a petition for writ of mandamus directing a city official to comply with her ministerial duties?

Did Anna Russell, City Secretary violate her ministerial duties to count and certify petitions for a proposed amendment to Houston's City Charter?

## STATEMENT OF FACTS

### *Course of Proceedings in the Lower Courts*

Realtor, Wilson obtained over 22,000 petitions to propose an amendment to Houston's City Charter. He requested that his proposed amendment be submitted to the voters in the next election. Houston City Secretary, Anna Russell, ("Russell") had the duty to count and certify the petitions. To date she has not performed this ministerial duty.

On Wilson's petition for writ of mandamus, the 270th District Court of Harris County granted Wilson mandamus relief to compel Russell to count and certify the petitions. (Appendix 1). Even after the order, Russell refused to perform her ministerial duties. Instead, Russell filed a notice of Interlocutory Appeal[1] calculated to cause Wilson and the 22,000 plus petition signers to miss an August 31, 2015 deadline to submit the proposed amendment to the voters. In re Woodfill, __ S.W.3d __, __, 2015 WL 4498229 (Tex. 2015) (per curiam)(recognizing August 31, 2015 deadline). The notice of appeal falsely stated it was an appeal of a temporary injunction, and urged that enforcement or the trial court's order was automatically

---

[1]. The notice of appeal falsely stated it was an appeal of a temporary injunction, and urged that enforcement or the trial court's order was automatically stayed pursuant to Tex. Civ. Pract. & Rem. Code Section 6.002, and Tex. R. App. P. 29.1(b). This appears to have been calculated to take away precious time.

stayed pursuant to Tex. Civ. Pract. & Rem. Code Section 6.002, and Tex. R. App. P. 29.1(b). Appendix "3" This action appears to have been calculated to use up precious time to get beyond the August 31, 2015 deadline.

The appeal was assigned to the First Court of Appeals. Wilson moved to dismiss the appeal. (Appendix "4"). On August 19, 2015, the Court of Appeals denied the motion, but indicated its concern that it lacked jurisdiction. (Appendix "2"). It gave the Real Parties in Interest ten days to respond to its concern. Unfortunately August 29, 2015 (a Saturday), will likely be too late. This petition for emergency mandamus followed.

### *Statement of Facts*

During the months of April, May June, and July 2015 Wilson sponsored and conducted a petition drive to amend, modify, or supplement Article II, Section 22 of Houston's City Charter. Pursuant to Texas Election Code § 277.001, and Texas Government Code § 9.004(a), Wilson collected approximately 22,000 petitions to define the term "gender identity." The Petition sought to define gender identity as:

> Except as required by State or Federal law, the City of Houston shall only define gender identify as an individual's innate identification, as either a male or female which is assigned at birth. Perceived or expressed gender identification is not allowed in defining gender identify. Further, the City of Houston shall require entities doing business with the city to abide by the same definition of

gender identification."

On July 9, 2015, Wilson filed the petitions with the Anna Russell, the Houston City Secretary. He requested that the petition be adopted by Houston City Council as a Charter Amendment, or alternatively, submitted to the voters for a vote. Anna Russell refused to count or certify Wilson's petitions. On July 10, 2015, Wilson filed his Original Petition for Writ of Mandamus with the 270th District Court of Harris County, Texas. On July 31, 2015, the district court conducted a hearing on Wilson's Petition for Writ of Mandamus. (Appendix "4") On July 28, 2015, the granted Wilson's Petition for Writ of Mandamus with respect to Defendant, Anna Russell and ordered her to count the petitions submitted by Wilson and to certify and present the same to the Houston City Council by August 8, 2015. (Appendix "1") On August 7, 2015, the day before the Anna Russell was to have completed her count and certification, she filed her notice of interlocutory appeal with the Court of Appeals. (Appendix "3").

## STATEMENT OF JURISDICTION

This Court has jurisdiction to issue writs of mandamus under Texas Constitution Article 5, Section 6; Texas Government Code Section 22.221(a); Texas Election Code Section 273.061; and Tex. R. App. P. 52. No genuine issues of material fact exist to divest this Court of mandamus jurisdiction. Relators are mindful of Tex. R. App. P. 52.3(c), which ordinarily requires Relators to file this Petition and Motion first with the Houston Court of Appeals, given that Court and this Court both have original jurisdiction to review this matter. However, although a number of matters were submitted to the Court of Appeals, given the time constraints, there is simply not enough time to go through both Courts, and thus a "compelling reason" within the meaning of the rule applies here for Relators to file with this Court and not the Houston Court of Appeals.

SUMMARY OF ARGUMENT

No interlocutory appeal lies from an interlocutory order granting a petition for writ of mandamus issued by a Texas District Court. CMH Homes v. Perez, 340 S.W.3d 444, 447–48 (Tex. 2011)(interlocutory appeals may only be taken where statutorily authorized). Since the First Court of Appeals lacks jurisdiction of the Real Parties in Interest's appeal, and its continued exercise of jurisdiction will likely result in irreparable harm to legislative power reserved to the people of Houston, In re Jared Woodfill,__ S.W.3d __, __, 2015 WL 4498229 (Tex. 2015) (per curiam), this Court should ordered that First Court of Appeals dismiss the appeal styled Annise D. Parker, Mayor, Anna Russell, City Secretary, and City of Houston v. David B. Wilson, 01-15-00687-CV, First Court of Appeals, Trial Court Number 2015-39706, 270th District Court of Harris County, Texas, for lack of jurisdiction.

Texas Government Code § 9.004(a) empowers Houston citizens to vote to amend their City Charter after a petition signed by a number of qualified voters of the municipality equal to at least five percent of the number of qualified voters of the municipality or 20,000 whichever number is smaller. The City of Houston Charter delegates to the city Secretary, Anna Russell, the ministerial function to certify to the Houston City Council the number of valid signatures on said petition, and present such petition and certificate to the Houston City Council. She refuse to do so, and

continues to refuse to do so. For the reasons set forth this Court's recent decisions in  In Re F.N. Williams, Sr, and Jared Woodfill, No. 15-00581 (Tex. August 19, 2015); In re Woodfill, __ S.W.3d __, __, 2015 WL 4498229  (Tex. 2015) (per curiam) mandamus is appropriate to compel Anna Russell to perform her ministerial duties.

ARGUMENT & AUTHORITIES

*Argument & Authorities Under Issue One*

Does the Court of Appeals have appellate jurisdiction of an interlocutory order of mandamus issued by a trial court? The answer is no. The order of the trial court was not an temporary injunction. It was the granting of a writ of mandamus. As stated by the Court of Appeals:

> This Court generally has jurisdiction only over appeals from final judgments unless a statute authorizes an interlocutory appeal.

citing, See CMH Homes v. Perez, 340 S.W.3d 444, 447–48 (Tex. 2011); Paulsen v. Yarrell, 455 S.W.3d 192, 195 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing Rusk State Hosp. v. Black, 392 S.W.3d 88, 92 (Tex. 2012)); see also, e.g., Tex. Civ. Prac. & Rem. Code Ann. § 51.014 (West 2015) (authorizing appeals from certain interlocutory orders). (Appendix 2) No statutory basis exists for reviewing an interlocutory mandamus by appeal.

A writ of mandamus will issue to compel a public official to perform a ministerial act. Womack v. Berry, 156 Tex. 44, 291 S.W.2d 677, 682 (1956); Turner v. Pruitt, 161 Tex. 532, 342 S.W.2d 422, 423 (1961). A writ of injunction is governed by Chapter 65 of the Texas Civil Practice & Remedies Code and requires balancing equities. The Texas Legislature permits interlocutory appeals of temporary

injunctions, but makes no allowance for appeals of mandamus orders. Tex. Civ. Pract. & Rem. Code Ann. § 51.014 (4) (West 2015). The courts strictly construe statutes that allow interlocutory appeals. Bally Total Fitness Corp. v. Jackson, 53 S.W.3d 352 (Tex. 2001).

The First Court of Appeals should have dismissed, and its delay (even if ever so slight) will result in irreparable harm to Wilson and the citizens of Houston. The result will be that the legislative powers of the citizens of Houston not be honored. In re Jared Woodfill, __ S.W.3d __, __, 2015 WL 4498229 (Tex. 2015) (per curiam). Wilson requests this Court to direct the court of appeals to dismiss the appeal styled Annise D. Parker, Mayor, Anna Russell, City Secretary, and City of Houston v. David B. Wilson, 01-15-00687-CV, First Court of Appeals, Trial Court Number 2015-39706, 270th District Court of Harris County, Texas, for want of jurisdiction, and certify that no further appeals are available.

### *Argument & Authorities Under Issue Two*

A writ of mandamus will issue to compel a public official to perform a ministerial act. M.D. Anderson v. City of Seven Points, 806 S.W. 2d 791, 793 (Tex. 1991). An act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion. Id. Generally, entitlement to mandamus relief is subject to establishing

three requisites: a legal duty to perform a non-discretionary act, a demand for performance, and a refusal. In re Cullar, 320 S.W. 3d 560, 564 (Tex.App.-Dallas 2010) citing O'Conner v. First Court of Appeals, 837 S.W. 2d 94, 97 (Tex. 1992). A writ of mandamus is appropriate to compel a public official to perform a ministerial act. In Re Roof, 130 S.W. 3d 414, 416 (Tex.App.-Houston [14th Dist.] 2004).

The Texas Government Code authorizes qualified voters of a municipality to propose amendments to the city's charter. Texas Government Code § 9.004(a) Specifically § 9.004(a) provides in relevant part:

> .... The governing body shall submit a proposed charter amendment to the voters for their approval at an election if a petition signed by a number of qualified voters of the municipality equal to at least five percent of the number of qualified voters of the municipality or 20,000, whichever number is smaller, supports the submission.

Because Texas Government Code 9.004 does not designate a particular person to count and certify the number of petitions, we look to other sources of law to make the determination. Houston's City Charter, the Texas Election Code, and the Texas Supreme Court placed the duty and responsibility on the City Secretary. The Houston City Secretary admits to performing the function. It is undisputed that Wilson submitted over 22,000 petitions to Anna Russell, Houston's city secretary.

This Court has recently addressed a number of refusals by the City of Houston

and its officers to recognize citizen initiatives. The Texas Supreme Court, on July 24, 2015 conditionally issued a writ of mandamus in In Re Woodfill over a referendum to repeal Houston's Equal Rights Ordinance. See In re Jared Woodfill, __ S.W.3d __, __, 2015 WL 4498229 (Tex. 2015) (per curiam). More recently, In re F.N. Williams, Sr., No. 15-0581 (Tex. August 19 2015), the Court granted a mandamus concerning Houston officials' ministerial duties. In Woodfill, this Court wrote"This dispute concerns the duties of the City Secretary and the City Council of Houston when a referendum petition is filed." After examining the Houston City Charter, this Court determined the responsibilities for counting petitions lies with the Houston City Secretary:

> The filing of a "signed and verified" petition in the prescribed form and manner triggers the City Secretary's duties. The Charter commits the following responsibilities to the City Secretary:
> On or before the thirtieth day after the date of filing of the petition the City Secretary shall certify to the City Council (a) the greatest total vote cast for Mayor at any city general election held within three years next preceding the date of the filing of such petition, and
> (b) the number of valid signatures on said petition, and shall present such petition and certificate to the Council.

Citing Houston City Charter Art. VII-b, § 2(b).

On or before the 30th day after the date of filing of the petition the City Secretary shall certify to the City Council the number of valid signatures on said

petition, and shall present such petition and certificate to the Council. The Houston City Secretary, Anna Russell, has refused to perform this simple, ministerial act. For similar reasons set forth in <u>Woodfill</u> and <u>Williams</u> this court should direct Anna Russell, City Secretary, to certify to the City Council the number of valid signatures on said petition, and shall present such petition and certificate to the Houston City Council.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Real Party In Interest prays that the Court direct the court of appeals to immediately dismiss the appeal in No. 01-15-00687-CV, or alternative to direct Anna Russell, City Secretary to certify to the City Council the number of valid signatures on the petitions submitted by Relator, and after Russell counts if the requisite number of signatures are present that city council either adopt the petition or place it on the November 3 ballot, and for such other and further relief as is just.

Respectfully submitted,

    /S/James D. Pierce
 James D. Pierce(15994500)

1 Sugar Creek Center Suite 1080
Sugar Land, TX 77478
(713) 650-0150
jim@jamespierce.com

ATTORNEY FOR Realtor

## VERIFICATION

STATE OF TEXAS §
§
COUNTY OF HARRIS §

On this day, David Wilson appeared before me, the undersigned notary public. After I administered the oath to him, upon his oath, he said:

"My name is David Wilson. I am over the age of 18 years old and I am competent to make this affidavit in all respects. I have read the Original Emergency Petition for Writ of Mandamus in the above referenced matter. The facts states therein are within my personal knowledge and are true and correct."

Further affiant sayeth not.

_____
David Wilson

## CERTIFICATE OF COMPLAINCE

This is to certify that the forgoing brief contains 3352 words.

___/S/James D. Pierce_____
James D. Pierce(15994500)

## TRAP 52.3(J) CERTIFICATION

Pursuant to TRAP 52.3(j), the undersigned certifies that he has reviewed the above Petition for Writ of Mandamus and concluded that every factual statement in the petition is supported by competent evidence included in the appendix and or the record.

___/S/James D. Pierce_____
James D. Pierce(15994500)

<u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing brief has been served on the below listed counsel of record this ___ day of August, 2015 through the Court's Electronic Filing System.

Respondents
Annise D. Parker, Mayor, Anna Russell, City Secretary, and City of Houston

Attorneys
Donna Edmundson City Attorney
Judith L. Ramsey Chief, General Litigation Section
Kathleen Hopkins
Alsina Senior Assistant City Attorney State Bar No. 09977050
Patricia L. Casey Senior Assistant City Attorney
State Bar No. 03959075 CITY OF HOUSTON LEGAL DEPARTMENT 900 Bagby, Fourth Floor Houston, Texas 77002 832.393.6491 (Telephone) 832.393.6259 (Facsimile) kate.alsina@houstontx.gov pat.casey@houstontx.gov


          /S/James D. Pierce_____
          James D. Pierce